1  JOSEPH P. RUSSONIELLO (CABN 44332)
   United States Attorney
2
   BRIAN J. STRETCH (CABN 163973)
3  Chief, Criminal Division

4  JAMES C. MANN (CABN 221603)
   Assistant United States Attorney
5
       1301 Clay Street, Suite 340-S
6      Oakland, California 94612
       Telephone:  (510) 637-3705
7      Facsimile:  (510) 637-3724
       E-Mail:    James.C.Mann@usdoj.gov
8

9  Attorneys for Plaintiff

           UNITED STATES DISTRICT COURT
10
           NORTHERN DISTRICT OF CALIFORNIA
11
                 OAKLAND DIVISION
12

13 UNITED STATES OF AMERICA,           )   No. CR-08-00262-SBA
                                       )
14          Plaintiff,                 )   GOVERNMENT'S OPPOSITION TO
                                       )   DEFENDANT'S MOTION TO SUPPRESS
15      v.                             )   EVIDENCE
                                       )
16 DANNY J. WILSON,                    )   Date:       September 16, 2008
                                       )   Time:       11:00 a.m.
17          Defendant.                 )   Court:      Hon. Saundra Brown
                                       )               Armstrong
18                                     )

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.   THE UNDERCOVER INVESTIGATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  THE INTERVIEWS OF WILSON AT HIS RESIDENCE. . . . . . . . . . . . . . . . . 3

    A.    The September 5, 2007 Interview And Computer Seizure. . . . . . . . . . . . . 3

    B.    The September 7, 2007 Interview. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III. THE SEARCH WARRANTS AND DISCOVERY OF CHILD PORNOGRAPHY. 5

    A.    Video's Recovered From Wilson's AOL Account. . . . . . . . . . . . . . . . . . 5

    B.    Pictures And Videos Recovered From Wilson's Computer. . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I.   A WARRANT WAS NOT REQUIRED FOR THE SEIZURE OF WILSON'S COMPUTER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    A.    Wilson's Computer Constitutes Contraband And Was In Plain View. . . . . 7

    B.    Agents Seized Wilson's Computer Due To The Exigent Circumstances. . . . 9

    C.    The Later Authorization Of The Search Warrant Demonstrates That Agents Would Have Inevitably Discovered The Evidence Recovered From Wilson's Computer. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

II.  GIVEN WILSON'S VALID CONSENT, NO SEARCH WARRANTS WERE REQUIRED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

III. THE SEARCH WARRANTS WERE VALID AND SUPPORTED BY PROBABLE CAUSE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    A.    The Magistrate's Finding Of Probable Cause Is Entitled To Great Deference. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        1.    SA Dugan's Description Of The Images Was Sufficient To Establish Probable Cause. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        2.    SA Dugan's Training And Experience And The Caselaw Support The "Fair Probability" That Wilson's Computer And Email Account Would Contain Child Pornography. . . . . . . . . . . . . . . . . . . . . . . 16

    B.    SA Dugan Relied In Good Faith On The Search Warrants. . . . . . . . . . . . 18

    C.    Defendant Has Failed to Establish That SA Dugan Made a False or Deliberately Misleading Statement Or Omission. . . . . . . . . . . . . . . . . . . 19

IV.  THE SEARCH OF WILSON'S COMPUTER DID NOT VIOLATE RULE 41. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

1  **CONCLUSION** ................................................... 24

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### FEDERAL CASES

Brigham City v. Stuart, 547 U.S. 398, 403 (2006) ................................... 6

Franks v. Delaware, 438 U.S. 154 (1978) ........................................ 20

Horton v. California, 496 U.S. 128, 136-37 (1990) ................................ 7

Texas v. Brown, 460 U.S. 730, 741 (1983) ....................................... 7

United States v. Adjani, 452 F.3d 1140, 1145 (9th Cir. 2006) ..................... 13

United States v. Battershell, 457 F.3d 1048, 1052-53 (9th Cir 2006) .............. 14

United States v. Cormier, 220 F.3d 1103, 1113 (9th Cir. 2000) ................... 11

United States v. Crawford, 657 F.2d 1041, 1047 (9th Cir. 1981) .................. 23

United States v. Crim. Triumph Capital Group, 211 F.R.D. 31, 66 (D. Conn 2002) ...... 23

United States v. DiCesare, 765 F.2d 890, 894-95,

amended, 777 F.2d 543 (9th Cir. 1985) ...................................... 20, 22

United States v. Dost, 636 F. Supp. 828, 832 ................................... 14

United States v. Dozier, 844 F.2d 701, 705 (9th Cir. 1988) ...................... 20

United States v. Fowlie, 24 F.3d 1059, 1067 (9th Cir. 1994) ..................... 18-20

United States v. Garcia, 205 F.3d 1182, 1187 (9th Cir. 2000) .................... 7

United States v. Giberson, 527 F.3d 882, 887-889 (9th Cir. 2008) ............... 7, 10

United States v. Gourde, 440 F.3d 1065, 1069 (9th Cir. 2006)(en banc) ........... 13

United States v. Hammett, 236 F.3d 1054, 1058 (9th Cir. 2001) .................. 20

United States v. Hill, 459 F.3d 966, 970 n. 4 (9th Cir. 2006) .................... 14-16

United States v. Hove, 848 F.2d 137, 139-40 (9th Cir. 1988) .................... 19

United States v. Jaramillo-Suarez, 950 F.2d 1378, 1387 (9th Cir. 1991) ........... 20

United States v. Lacy, 119 F.3d 742, 746 (9th Cir. 1997) ....................... 17

United States v. Leon, 468 U.S. 897 (1984) ................................. 18, 19

United States v. Licata, 761 F.2d 537, 540-41 (9th Cir. 1984) .................... 9

United States v. Motz, 936 F.2d 1021, 1024 (9th Cir. 1991) ..................... 20

United States v. Place, 462 U.S. 696, 702, 709 (1983) .......................... 12

United States v. Ramirez-Sandoval, 872 F.2d 1392, 1396 (9th Cir. 1989) ........... 10

United States v. Reilly, 224 F.3d 986, 995 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

United States v. Respress, 9 F.3d 483, 486 (6th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

United States v. Riccardi, 405 F.3d 852, 861 (10th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . 17

United States v. Rodriquez, 464 F.3d 1072, 1077-78 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . 12

United States v. Soriano, 361 F.3d 494, 502 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . 11

United States v. Williamson, 439 F.3d. 1125, 1133 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . 23

## FEDERAL STATUTES

18 U.S.C. § 2256(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

1   The United States of America respectfully requests that the Court deny Defendant Danny

2   J. Wilson's motion to suppress the computer seized from his home and the evidence recovered

3   therefrom as well as the evidence recovered from Wilson's email account.

4   **<u>INTRODUCTION</u>**

5   Danny J. Wilson came to the attention of the Federal Bureau of Investigation ("FBI")

6   after he engaged in an explicit online chat with an undercover agent that Wilson believed to be a

7   13 year-old girl with the screen name of "BlondeeBrit13." During the chat, Wilson asked

8   "BlondeeBrit13," "are you home alone and horny to play online with an older guy like me

9   babygirl?" He sent her two pictures of himself, one picture of a naked, erect penis that he

10  represented was him, and then three pictures containing child pornography.

11  After months of careful investigation, Special Agent ("SA") S. Cort Dugan tracked the

12  email address Wilson used to send the child pornography back to Wilson at a specific address in

13  Concord, California. To confirm Wilson's involvement, SA Dugan interviewed Wilson at his

14  apartment. Wilson invited SA Dugan into his apartment, where he admitted to sending the three

15  pictures containing child pornography to "BlondeeBrit13." Wilson then provided a detailed

16  description of his explicit online chat habits and his exchange of explicit photographs.

17  As the interview came to an end, based upon Wilson's admissions, SA Dugan determined

18  there was probable cause to believe that Wilson's computer contained evidence concerning the

19  possession and transportation of child pornography. Therefore, SA Dugan seized the computer

20  pursuant to the well-accepted "plain view" and "exigency" exceptions to the warrant

21  requirement. SA Dugan then asked for Wilson's permission to search both the computer and

22  Wilson's email account. Wilson granted written permission to search the computer, but declined

23  to allow the search of his email account. Three hours later, however, Wilson called to give

24  permission for SA Dugan to assume Wilson's online identity, which would allow agents to take

25  over Wilson's email account. Wilson then gave SA Dugan written permission to "access[] stored

26  information" in Wilson's email account. Thus, Wilson's computer was properly seized and

27  Wilson's consent then obviated any further need for search warrants to search either his computer

28  or his email account.

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE
No. CR-08-00262-SBA                                    1

1    Despite Wilson's consent, out of an abundance of caution, SA Dugan sought search

2  warrants for Wilson's computer and email account. SA Dugan's affidavits contained the same

3  facts (i.e., the same probable cause) upon which he had previously relied to seize Wilson's

4  computer. United States Magistrate Judge Edward M. Chen agreed that these facts established

5  probable cause and authorized the search warrants. Armed now with Wilson's consent and the

6  search warrants, SA Dugan and other FBI agents searched Wilson's computer and email account,

7  finding hundreds of images and several videos containing child pornography. Ignoring the fact

8  that he gave written consent to search both his computer and email account, Wilson now seeks to

9  suppress the evidence recovered from those locations.

10    **FACTUAL BACKGROUND**

11  **I.    THE UNDERCOVER INVESTIGATION.**

12    During an online undercover investigation conducted by the Cleveland Division of the

13  FBI, on January 16, 2007, Wilson engaged in an explicit online chat with an agent posing as a 13

14  year-old girl in an online chat room. Affidavit In Support Of Application For Search Warrant for

15  Wilson's Computer ("Affidavit"), at ¶ 19(a).[1] The undercover agent was using the screen name

16  and email address "BlondeeBrit13;" Wilson was using the screen name and email address

17  "Eyemkinkyru2." Id. During the chat, Wilson asked "BlondeeBrit13," "are you home alone and

18  horny to play online with an older guy like me babygirl?" Id.

19    Wilson also sent two pictures of himself, and a picture of a naked, erect penis to

20  "BlondeeBrit13," requesting that "BlondeeBrit13" send pictures of herself to him in return. Id. at

21  ¶ 19(b); Declaration of S. Cort Dugan In Support Of Government's Opposition To Defendant's

22  Motion To Suppress Evidence ("Dugan Decl."), at ¶ 4, Exh. A (chat transcript).

23  "BlondeeBrit13" asked Wilson if he had pictures of girls her age, and Wilson responded that he

24  did. Dugan Decl., at ¶ 4, Exh. A. Wilson stated that he had pictures of "yng" girls – meaning

25  "young" girls – and pictures of individuals the same age as "BlondeeBrit13" that are "normal and

26  naughty." Id.; Affidavit at ¶ 19(b). And, Wilson sent "BlondeeBrit13" three pictures of minor

27  ───────────────────

28  [1]The Affidavit In Support Of Application For Search Warrant for Wilson's Computer is
attached to Defendant's Motion To Suppress ("Defendant's Motion") as Exhibit C.

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE
No. CR-08-00262-SBA                                    2

girls engaging in sexual acts, including: one photo of a minor girl holding a dildo; one photo of a minor girl posed in a sexually suggestive manner on a chair, focusing on her underwear and genitalia or pubic area beneath her skirt; and one photo of a naked, minor female posed in a sexually suggestive manner, focusing on her genitalia or pubic area. Affidavit at ¶ 19(b).

Through a subpoena to AOL, the FBI determined that Wilson's "Eyemkinkyru2" email address was registered to a J. Wilson at a specific address in Concord., California. Id. at ¶ 19(c). Then, through further research, SA Dugan determined that Danny J. Wilson lived with his mother at 2044 Sierra Road, Apartment 4, Concord, California. Id. at ¶ 20.

## II.   THE INTERVIEWS OF WILSON AT HIS RESIDENCE.

### A.   The September 5, 2007 Interview And Computer Seizure.

On September 5, 2007, SA Dugan and another FBI agent interviewed Wilson at Wilson's apartment. Id. at ¶ 21. Wilson answered the door of the apartment and stepped outside to speak with the agents. Dugan Decl. ¶ 5. SA Dugan recognized Wilson from the pictures Wilson had sent of himself to "BlondeeBrit13." Id. After agreeing to speak with the agents, Wilson began speaking first, stating that he needed to stop chatting online and that he should let fantasies end online. Id. at ¶ 6. Wilson also admitted to recognizing the email address "Eyemkinkyru2," which is the screen name he had used to chat with "BlondeeBrit13" and the email address from which he sent child pornography to "BlondeeBrit13." Affidavit at ¶ 21(a).

When work conducted by a nearby landscaping crew made it difficult to hear, SA Dugan asked Wilson if there was a quieter place to talk. Dugan Decl. ¶ 7. Wilson then invited the agents into his apartment. Id. Wilson asked if he was under arrest, and SA Dugan responded that Wilson was not under arrest, that the interview was voluntary, and that Wilson was free to leave at any time. Id. Wilson was never handcuffed, and the agents' weapons were not visible at any time. Id.

Wilson stated that he used a Mac computer with a missing case and broken drives – the computer seized in this case – which was the only computer in the house. Id. at ¶ 8; Affidavit at ¶ 21(b). Wilson stated that he chatted in chat rooms with sexually explicit names on AOL and that he exchanged pictures with girls who were under 18. Dugan Decl. ¶ 8; Affidavit at ¶ 21(c).

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE
No. CR-08-00262-SBA                                        3

1  Wilson estimated that he had been chatting in chat rooms for approximately three years. Dugan

2  Decl. ¶ 8. He stated that he chatted with people possibly under the age of 13. Id. Wilson

3  described in detail his method for exchanging pictures with individuals over the internet and his

4  practice of requesting the chat participants' "age, sex, and location." Id.; Affidavit at ¶ 21(c). He

5  stated that he typically requested pictures of the persons with whom he was chatting and sent

6  pictures of himself to the persons with whom he was chatting. Affidavit at ¶ 21(c). Wilson also

7  described a detailed picture-rating system in which pictures of a clothed torso received a "G"

8  rating, pictures of a girl wearing a bra and panties received a "R" rating, and naked pictures

9  received a "X" rating. Dugan Decl. ¶ 8.

10      Wilson also stated that he had received pictures of "attractive" girls between the ages of

11  16 and 35 years-old and pictures of pre-teen girls. Affidavit at ¶ 21(b). When asked about the

12  ages of the people in pictures on his computer, Wilson responded that they were 16 years-old.

13  Id.; Dugan Decl. ¶ 8. He stated that he had pictures on his computer that he did not want to

14  show the agents and that all of the inappropriate pictures on his computer came from other AOL

15  users. Id.

16      SA Dugan then showed Wilson some of the photos Wilson had previously sent to

17  "BlondeeBrit13." Wilson admitted that two of the photos were of him, and that the photo of the

18  naked, erect penis was not a picture of him, but that he sent it to people stating it was him.

19  Dugan Decl. at ¶ 9. Wilson also admitted to sending the three pictures of minor girls engaging in

20  sexual acts described in section "I" above. Affidavit at ¶ 21(a). With respect to the picture of the

21  naked, minor female posed in a sexually suggestive manner, focusing on her genitalia or pubic

22  area, Wilson stated that he believed the girl to be 10 years-old. Id.

23      SA Dugan explained that he was taking Wilson's computer because it had child

24  pornography on it. Dugan Decl. at ¶ 10. SA Dugan asked Wilson to sign a form consenting to

25  allow FBI agents to assume his online identity. Id. Wilson refused. Id. SA Dugan then asked

26  Wilson to sign a form consenting to the search of his computer. Id. Wilson agreed. Id. at ¶ 10,

27  Exh. B (signed consent form); Affidavit at ¶ 21(d). The form informed Wilson of his right to

28  refuse consent and confirmed that Wilson's consent was voluntary. Dugan Decl. at ¶ 10, Exh. B.

**B.**    <u>The September 7, 2007 Interview.</u>

Approximately three hours after the interview on September 5, 2007, Wilson called SA Dugan and stated that he would like to give permission to have agents assume his online identity. Dugan Decl. at ¶ 12. On September 7, 2007, SA Dugan and another FBI agent returned to Wilson's residence to allow Wilson to sign the consent form. <u>Id.</u> at ¶ 13. On September 7th, Wilson again invited the agents into his apartment. <u>Id.</u> Again, neither of the agents' weapons were visible at any time. <u>Id.</u>

SA Dugan gave Wilson the consent form and again explained that Wilson's providing of his consent to assume his online identity was completely voluntary. <u>Id.</u> at ¶ 14. Wilson confirmed and recalled SA Dugan's admonishment that the prior interview had been completely voluntary as well. <u>Id.</u> SA Dugan asked Wilson to read the consent form and to ask any questions he had before signing it. <u>Id.</u> Wilson's only expressed concern was that he not be charged for maintaining his AOL account after it was scheduled to be cancelled on September 21, 2007. <u>Id.</u> Wilson then signed the consent form, which explained that Wilson was consenting to allow agents to "access[] stored information" in his email account, among other things. <u>Id.</u> at ¶ 14, Exh. C (signed consent form).

Wilson reiterated that any pictures on his computer were received from other people. Wilson again asked how long it would take for him to be arrested. <u>Id.</u> at ¶ 15.

**III.**    <u>THE SEARCH WARRANTS AND DISCOVERY OF CHILD PORNOGRAPHY.</u>

On October 22, 2007, United States Magistrate Judge Edward M. Chen authorized search warrants for the computer seized from Wilson's apartment and Wilson's email address.

**A.**    <u>Video's Recovered From Wilson's AOL Account.</u>

On October 29, 2008, in response to the search warrant, AOL provided a CD containing three videos recovered from Wilson's email account to the FBI. Dugan Decl. at ¶ 16. The first video file, titled "message001-2 yng girls.mpeg," shows a young girl (approximately 12-16 years-old) lying naked on a bed while another person apparently performs oral sex on her. <u>Id.</u> The second video file, titled "message002-Mia date night.avi," shows a naked young girl with no breast development nor pubic hair (approximately 8-10 years-old) fondling her breast and pubic

1   region. Id. The third video file, titled "message003-Mia strokes it.avi," shows a naked girl, who

2   is approximately 5 to 8 years-old, performing oral sex on a man; while holding her head in place,

3   the man appears to ejaculate into the girl's mouth. Id.

4       **B.**   **Pictures And Videos Recovered From Wilson's Computer.**

5         On October 25, 2007, the FBI submitted Wilson's computer to the forensic laboratory for

6   examination. Dugan Decl. at ¶ 17. Because the computer is an older model Apple computer, a

7   different forensic examination program than that which is typically used was required. Id. at ¶

8   18. The examiner began examination of the computer on November 13, 2007. Id. The forensic

9   examination program used required more time to operate than the typical program; likewise, it

10  required greater review and analysis by the examiner. Id. The aged model of the computer also

11  slowed the forensic examination process. Id. Therefore, the government sought an extension of

12  the 30-day deadline set forth in the search warrant to December 31, 2007, and on or about

13  November 19, 2007, United States Magistrate Judge Bernard Zimmerman granted that request.

14  See United States Application For Extension Of Time To Examine Seized Computer Evidence

15  and Order attached hereto as Exhibit 1.

16        On November 30, 2007, the FBI received a DVD containing hundreds of images and

17  several videos depicting child pornography recovered from Wilson's computer. These images

18  and videos are available for the Court's review.

19                          **ARGUMENT**

20  **I.**   **A WARRANT WAS NOT REQUIRED FOR THE SEIZURE OF WILSON'S**

21        **COMPUTER.**

22        Although "[i]t is a basic principle of Fourth Amendment law that searches and seizures

23  inside a home without a warrant are presumptively unreasonable … the warrant requirement is

24  subject to certain exceptions." Brigham City v. Stuart, 547 U.S. 398, 403 (2006) (internal

25  quotation and citation omitted). Here, the warrantless seizure of Wilson's computer falls within

26  the "plain view" and "exigency" exceptions to the warrant requirement. Furthermore, even if this

27  Court was to find a Fourth Amendment violation, this Court may admit the evidence if it would

28  have been discovered through independent and lawful means (i.e., "independent source" or

1    "inevitable discovery" doctrines) – such as, here, through the search warrant issued by United

2    States Magistrate Judge Chen.[2]

3          **A.**      <u>**Wilson's Computer Constitutes Contraband And Was In Plain View.**</u>

4          The Fourth Amendment permits law enforcement officers to seize items for which they

5    do not have a warrant when the items are found in plain view, and (1) the officers are lawfully in

6    a position to observe the items, and (2) it is immediately apparent to the officers that the items

7    are evidence of a crime, contraband, or otherwise subject to seizure. <u>Horton v. California</u>, 496

8    U.S. 128, 136-37 (1990); <u>United States v. Garcia</u>, 205 F.3d 1182, 1187 (9th Cir. 2000).

9          Here, both prongs of the "plain view" analysis are satisfied. With respect to the first

10   element, there is no evidence that the agents violated the Fourth Amendment by entering

11   Wilson's residence and viewing Wilson's computer. Wilson does not dispute that he invited the

12   FBI agents into his residence. Thus, the agents were lawfully in a position to observe the seized

13   computer.

14         With respect to the second element, the "immediately apparent" language has been

15   interpreted to mean that the agents must have probable cause to believe that the object is

16   contraband or evidence of a crime. <u>Texas v. Brown</u>, 460 U.S. 730, 741 (1983).

17       [P]robable cause is a flexible, common-sense standard. It merely requires that the facts
     available to the officer would warrant a man of reasonable caution in the belief that

18       certain items may be contraband or stolen property or useful as evidence of a crime; it
     does not demand any showing that such a belief be correct or more likely true than false.

19       <u>Id.</u> at 742 (internal quotations and citations omitted).

20         Importantly, here, SA Dugan relied upon the very same facts to determine that there was

21   probable cause to *seize* Wilson's computer as United States Magistrate Judge Chen later relied

22   upon to determine that there was probable cause to *search* Wilson's computer. <u>See United States</u>

23   <u>v. Respress</u>, 9 F.3d 483, 486 (6th Cir. 1993)(finding "because the officers obtained no new

24   investigatory information between the time of the seizure and the time they applied for the search

25   _____

26       [2] Defendant argues that computers are subject to some special or heightened protection
     under the Fourth Amendment. <u>See</u> Defendant's Motion at 8:16-22. The Ninth Circuit, however,

27   has expressly rejected this contention. <u>United States v. Giberson</u>, 527 F.3d 882, 887-889 (9th Cir.
     2008) ("the potential intermingling of materials does not justify an exception or heightened

28   procedural protections for computers . . . .").

warrant, if there was probable cause to search the suitcase, there was *ipso facto* probable cause to seize the suitcase."). Moreover, since SA Dugan was present for the interview of Wilson and had the pictures Wilson sent to "BlondeeBrit13," SA Dugan had even more facts supporting his probable cause determination. In summary:

- Wilson engaged in an explicit online chat with an individual he believed to be a 13 year-old girl and during which Wilson stated: "are you home alone and horny to play online with an older guy like me babygirl?" Affidavit at ¶ 19(a).

- During the chat, Wilson stated that he had pictures of individuals the same age as "BlondeeBrit13" engaged in sexual acts. Dugan Decl. ¶ 4, Exh. A.[3]

- Wilson admitted that he sent three pictures of minor girls engaging in sexual acts, including: one photo of a minor girl holding a dildo; one photo of a minor girl posed in a sexually suggestive manner on a chair, focusing on her underwear and genitalia or pubic area beneath her skirt; and one photo of a naked, minor female posed in a sexually suggestive manner, focusing on her genitalia or pubic area.[4] Affidavit at ¶ 21(a).

- Wilson admitted that he believed the naked girl posed in a sexually suggestive manner, in which the photo focused on her genitalia or pubic area, was 10 years-old. Affidavit at ¶ 21(a).

- Wilson admitted that he received pictures of "attractive" girls between the ages of 16 and 35 years-old and pictures of pre-teen girls, and that he had pictures of 16 years-olds on his computer. He also stated that he had pictures on his computer that he did not want to show the agents. And, he stated that all inappropriate pictures on his computer came from other AOL users. Affidavit at ¶ 21(b); Dugan Decl. ¶ 8.

- Wilson stated that he frequented chat rooms with sexually explicit names on AOL, and that he exchanged pictures with girls who were under 18. He also stated that he chatted with people possibly under the age of 13. Wilson described in detail his method for exchanging pictures with individuals over the internet, his practice of requesting the chat participants' "age, sex, and location," and a detailed picture rating system in which pictures of a clothed torso received a "G" rating, pictures of a girl wearing a bra and panties received a "R" rating, and naked pictures received a "X" rating. Affidavit at ¶ 21(c); Dugan Decl. ¶ 8.

- Wilson admitted that he used the computer eventually seized by SA Dugan to access AOL and the internet and stated that it was the only computer in the residence. Affidavit at ¶ 21(b).

---

[3]Although SA Dugan did not have a copy of the chat at the time he interviewed Wilson or at the time he prepared the affidavits in support of the applications for search warrants in this case, he had a written "lead" from the Cleveland Division, which stated that "Eyemkinkyru2" had advised during that chat that he had pictures of kids the same age as the undercover engaging in sexual acts. Dugan Decl. at ¶ 4.

[4]These photos can be made available for the Court's review.

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE
No. CR-08-00262-SBA                                    8

1        Taken together, Wilson's candid admissions were enough to "warrant a man of

2    reasonable caution in the belief that [Wilson's computer] . . . may be contraband . . . or useful as

3    evidence of a crime." <u>Brown</u>, 460 U.S. at 742.

4        In addition to Wilson's candid admissions, however, SA Dugan also relied upon his

5    training and experience related to child pornography investigations.  Based upon his training and

6    years of experience, SA Dugan understood that graphic image files containing child pornography

7    can be maintained for long periods of time on a computer; and, most often the collector of child

8    pornography maintains the files purposefully.  Affidavit at ¶ 16.  Furthermore, even when the

9    pornographic files have been deleted (due to guilt or fear of discovery), computer forensic

10    experts are often able to recover the pornographic images that were purposefully possessed at

11    some previous time from various portions of the computer's memory files.  <u>Id.</u>  Such information

12    is often maintained indefinitely until overwritten by other data.  <u>Id.</u>

13        Given the flexible, common-sense probable cause standard and the totality of the

14    circumstances, including Wilson's incriminating admissions and SA Dugan's training and

15    experience, SA Dugan reasonably believed that Wilson's computer contained child pornography

16    and evidence related to the possession and transportation of child pornography.  Therefore, SA

17    Dugan properly seized the computer, which was in plain view.

18        **B.**    <u>**Agents Seized Wilson's Computer Due To The Exigent Circumstances.**</u>

19        Law enforcement can make a warrantless seizure if they:  (1) have probable cause to

20    believe that a container holds contraband; and (2) the exigencies of the circumstances demand

21    the seizure.  <u>United States v. Licata</u>, 761 F.2d 537, 540-41 (9th Cir. 1984).  "Exigent

22    circumstances exist because a reasonable person believes that prompt action is necessary to

23    prevent the destruction of relevant evidence or prevent other consequences that may improperly

24    frustrate legitimate law enforcement efforts."  <u>Id.</u> at 543.

25        With respect to the first prong of the "exigent circumstances" analysis, relying on the

26    same probable cause discussed in subsection "A" immediately above, SA Dugan was also

27    permitted to seize Wilson's computer to prevent the destruction of evidence while he obtained a

28    search warrant to search the computer – or in this case, while he obtained Wilson's consent.

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE
No. CR-08-00262-SBA         9

With respect to the second prong of the analysis, it has been commonly accepted that data contained on a computer is fluid and easily destroyed. See Giberson, 527 F.3d at 889 ("Computer records are extremely susceptible to tampering, hiding, or destruction, whether deliberate or inadvertent."). Thus knowing that he was under investigation, Wilson could have quickly began destroying evidence by removing the child pornography from his computer and wiping the hard drive clean if SA Dugan left the computer with Wilson. Therefore, SA Dugan's seizure of the computer was justified to prevent Wilson's destruction of the evidence.

**C.     The Later Authorization Of The Search Warrant Demonstrates That Agents Would Have Inevitably Discovered The Evidence Recovered From Wilson's Computer.**

Even if the seizure of Wilson's computer is not authorized under the "plain view" or "exigent circumstances" exceptions to the warrant requirement, the evidence would still be admissible under the inevitable discovery and independent source exceptions to the exclusionary rule. Illegally obtained evidence is admissible if the government proves by a preponderance of evidence that "the tainted evidence would inevitably have been discovered through lawful means." United States v. Ramirez-Sandoval, 872 F.2d 1392, 1396 (9th Cir. 1989) (citing Nix v. Williams, 467 U.S. 431, 444 (1984)).

The Ninth Circuit has held that the inevitable discovery exception to the exclusionary rule does not apply "to excuse the failure to obtain a warrant merely because the officers had probable cause and could have inevitably obtained a warrant." United States v. Reilly, 224 F.3d 986, 995 (9th Cir. 2000) (noting that allowing such an exception would obviate the warrant requirement). That is not, however, the application the government suggests here. The government does not suggest that the evidence should be admitted because the agents had probable cause and *could have* obtained a warrant before seizing the computer.

Instead, the government argues that the agents did, in fact, obtain a search warrant (not based upon any evidence gained by the seizure of the computer), following the seizure of Wilson's computer. Thus, unless Wilson unlawfully destroyed the evidence on his computer between the September 5th interview and the October 22nd search of the computer, the agents would have recovered all of the same evidence from Wilson's computer. Stated differently, the

1  evidence recovered from Wilson's computer would have inevitably been recovered following

2  issuance of the search warrant.

3  Moreover, and as discussed more fully below, Wilson consented to the search of both his

4  computer and his AOL email account.  Therefore, the evidence recovered from Wilson's

5  computer would have been recovered pursuant to a consent search as well.

## II.    GIVEN WILSON'S VALID CONSENT, NO SEARCH WARRANTS WERE REQUIRED.

8  Wilson seeks to suppress the evidence recovered both from his computer and his AOL

9  email account based upon alleged shortcomings in the search warrants for both of these locations.

10  That said, Wilson completely ignores the fact that he consented to the search of both his

11  computer and his email account prior to SA Dugan even applying for search warrants.  Moreover,

12  Wilson does not contend that his consent was obtained against his will or was otherwise invalid.

13  Wilson's valid consent obviated the need for any search warrants in this matter.

14  Although Wilson does not contest the validity of his consent, the government will briefly

15  address the issue here.  The Ninth Circuit considers five factors when determining whether a

16  person has freely consented to a search:

17  (1) whether defendant was in custody;

18  (2) whether the arresting officers had their guns drawn;

19  (3) whether Miranda warnings were given;

20  (4) whether the defendant was told he had the right not to consent; and

21  (5) whether the defendant was told that a search warrant could be obtained.

22  E.g., United States v. Soriano, 361 F.3d 494, 502 (9th Cir. 2004).  "It is not necessary for all five

23  factors to be satisfied in order to sustain a consensual search," but rather, "a district court [must]

24  consider the totality of the circumstances when evaluating consent."  United States v. Cormier,

25  220 F.3d 1103, 1113 (9th Cir. 2000).

26  In the instant case, Wilson was never in custody.  Dugan Decl. ¶ 7.  In fact, he voluntarily

27  answered the door when the agents arrived at his apartment on two separate occasions.  Id. at ¶¶

28  7, 13.  Apparently understanding exactly why the agents were present, Wilson agreed to talk with

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE
No. CR-08-00262-SBA                                    11

1   the agents outside his front door. Id. at ¶ 7. With this same knowledge, Wilson invited the

2   agents into his residence, again, on two separate occasions. Id. at ¶¶ 7, 13. The FBI agents' guns

3   were not displayed, and SA Dugan explained that Wilson was not under arrest and he was free to

4   leave at any time. Id. at ¶¶ 7, 13. Because Wilson was not in custody, no Miranda warnings

5   were required. United States v. Rodriguez, 464 F.3d 1072, 1077-78 (9th Cir. 2006)(finding

6   Miranda warnings inapposite when individual not in custody and finding consent voluntary based

7   upon remaining factors). Additionally, Wilson was not threatened with a search warrant if he

8   failed to consent to the search of his computer or his email account. To the contrary, Wilson

9   signed consent forms, which clearly explained that he had the right to refuse and that his consent

10  was given voluntarily. Id. at ¶ 10, Exh. B and ¶ 14, Exh. C. Courts have found that, in addition

11  to the five factors above, execution of a written consent form – as Wilson did on two separate

12  occasions in this case – is another factor indicating that consent is voluntary. Rodriquez, 464

13  F.3d at 1079.

14       Most significantly, Wilson demonstrated his understanding that he did not have to

15  consent to the search of his computer or his email account when he initially denied the agents'

16  request to assume his online identity. Id. at ¶ 10. Then, three hours later, Wilson affirmatively

17  called agents to give them permission to assume his online identity. Id. at ¶ 12. Therefore,

18  Wilson's valid and voluntary consent obviated the need for any search warrants in this case.

19       Wilson's complaint regarding the detention of his computer between the seizure and the

20  obtaining of a search warrant is also irrelevant given Wilson's valid written consent to the search

21  of his computer. Stated differently, the computer was properly seized pending issuance of a

22  search warrant,[5] and Wilson's valid consent obviated the need to obtain the search warrant.

23

24  _____

25  [5]"Where law enforcement authorities have probable cause to believe that a container
    holds contraband or evidence of a crime, but have not secured a warrant, the Court has
26  interpreted the [Fourth] Amendment to permit seizure of the property, pending issuance of a
    warrant to examine its contents, if the exigencies of the circumstances demand it or some other
27  recognized exception to the warrant requirement is present." United States v. Place, 462 U.S.
    696, 702, 709 (1983).
28

III.    **THE SEARCH WARRANTS WERE VALID AND SUPPORTED BY PROBABLE CAUSE.**

Wilson argues that the search warrants authorized by United States Magistrate Judge Chen are not supported by probable cause.  In determining the existence of probable cause to search, "a magistrate judge is only required to answer the 'commonsense practical question whether there is probable cause to believe that contraband or evidence is located in a particular place' before issuing a search warrant."  United States v. Gourde, 440 F.3d 1065, 1069 (9th Cir. 2006)(en banc)(quoting Illinois v. Gates, 462 U.S. 213, 230 (1983)).  Simply put, probable exists where an affidavit establishes a "fair probability" that contraband or evidence of a crime will be found at a given location.  See Gates, 462 U.S. at 238; United States v. Adjani, 452 F.3d 1140, 1145 (9th Cir. 2006); Gourde, 440 F.3d at 1069 (probable cause means fair probability, not certainty or preponderance of the evidence).  In evaluating whether an affidavit establishes probable cause, the magistrate should employ a "totality of the circumstances" test.  Gourde, 440 F.3d at 1069 (citing Gates, 462 U.S. at 246); Adjani, 452 F.3d at 1145 (probable cause is a practical, nontechnical conception).

Furthermore, a magistrate's determination that an affidavit sets forth probable cause should be paid great deference.  Gourde, 440 F.3d at 1069 (citing Spinelli v. United States, 393 U.S. 410, 419 (1969)).  In Gourde, the Ninth Circuit stated this "deferential approach is the antithesis of a 'grudging or negative attitude' toward search warrants and 'a hypertechnical rather than commonsense analysis.'"  440 F.3d at 1069 (quoting United States v. Ventresca, 380 U.S. 102, 108-09 (1965)).  In addition, the Supreme Court has reminded reviewing courts that "[a]lthough in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, resolution of doubtful or marginal cases in this area should largely be determined by the preference to be accorded to warrants."  Gates, 462 U.S. at 237 n.10 (quoting United States v. Ventresca, 380 U.S. 102, 109 (1965)).

////

////

////

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE
No. CR-08-00262-SBA                              13

A.    **The Magistrate's Finding Of Probable Cause Is Entitled To Great Deference.**

1.    **SA Dugan's Description Of The Images Was Sufficient To Establish Probable Cause.**

Wilson does not dispute that the three images he sent to "BlondeeBrit13" are child pornography. Nor does Wilson dispute the accuracy of SA Dugan's description of the pictures. Instead, Wilson argues that the descriptions of the pictures were not sufficient for the magistrate to find probable cause. As stated above, however, United States Magistrate Judge Chen's finding of probable cause is entitled to great deference.

First, with respect to Wilson's claim that the pictures must be provided to the magistrate with the search warrant affidavits, the Ninth Circuit has repeatedly held to the contrary. See, e.g., United States v. Battershell, 457 F.3d 1048, 1052-53 (9th Cir 2006)("a judge may properly issue a warrant based on factual descriptions of an image;" "failing to include a photograph in a warrant application is not fatal to establishing probable cause"); United States v. Hill, 459 F.3d 966, 970 n. 4 (9th Cir. 2006) (same). Furthermore, the Ninth Circuit has also stated: "Elaborate and detailed descriptions are unnecessary because "any rational adult person can recognize sexually explicit conduct engaged in by children under the age of 16 when he sees it." Battershell, 457 F.3d at 1053 (internal quotations and citations omitted).

Second, Wilson's statement that not all images of nude children are pornographic is correct. Courts have often commented that a family snapshot of a nude child bathing presumably would not be criminal. Hill, 459 F.3d at 971. The statute defines various categories of conduct that fall within the definition of "sexually explicit conduct," including (1) sexual intercourse, (2) bestiality, (3) masturbation, (4) sadistic or masochistic abuse, and (5) lascivious exhibition of the genitals or pubic region. 18 U.S.C. § 2256(2). Here, the pictures Wilson sent to "BlondeeBrit13," and described in the warrant affidavits, fall into the latter category – "lascivious exhibition of the genitals or pubic region."

To determine whether the pictures can be described as "lascivious," the Ninth Circuit has relied upon a six-factor test originated in United States v. Dost, 636 F. Supp. 828, 832 (S.D. Cal. 1986):

    (1)    whether the focal point of the visual depiction is on the child's genitalia or pubic area;

    (2)    whether the setting of the visual depiction is sexually suggestive, <u>i.e.</u>, in a place or pose generally associated with sexual activity;

    (3)    whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

    (4)    whether the child is fully or partially clothed, or nude;

    (5)    whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;

    (6)    whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

<u>Hill</u>, 459 F.3d at 971. SA Dugan's description of the images provides sufficient detail to allow for the conclusion that the pictures are "lascivious." Likewise, if considered in context, it is clear that Wilson too associated the pictures with sex and intended them to "elicit a sexual response;" during the explicit chat in which he sent the photos, Wilson asked "BlondeeBrit13," "are you home alone and horny to play online with an older guy like me babygirl?" Affidavit at ¶ 19(a).

To provide further analysis, however, SA Dugan describes the first picture as displaying a "minor girl holding a dildo." <u>Id.</u> at ¶ 19(b). Clearly, the holding of a dildo is "sexually suggestive" or "generally associated with sexual activity." Likewise, a child holding a "dildo" is "an unnatural pose." Moreover, the picture may suggest a "willingness to engage in sexual activity" and was clearly intended to "elicit a sexual response."

SA Dugan describes the second picture as depicting "a minor girl posed in a sexually suggestive manner on a chair, focusing on her underwear and genitalia or pubic area beneath her skirt." <u>Id.</u> at ¶ 19(b). As described, the picture (1) focuses on the child's genitalia or pubic area; (2) depicts a child posed in a "sexually suggestive manner," and (3) focuses on her underwear beneath her skirt.

Finally, SA Dugan describes the third picture as depicting "a naked minor female posed in a sexually suggestive manner, focusing on her genitalia or pubic area." <u>Id.</u> at ¶ 19(b). Thus, as

1    described, the picture depicts (1) a completely nude child, (2) who is posed in a "sexually

2    suggestive manner," and (3) focuses on her nude genitalia or pubic region.

3        In summary, SA Dugan uses descriptions directly from the <u>Dost</u> test for "lasciviousness,"

4    which has been accepted by the Ninth Circuit.  Although Wilson believes that the descriptions

5    should have been more detailed or somehow different – he does not dispute the accuracy of the

6    descriptions or the fact that the photos depict child pornography – United States Magistrate Judge

7    Chen found the descriptions sufficient to make a probable cause determination.  The magistrate

8    "need only make a 'practical, common-sense decision' that the description presented in the

9    affidavit demonstrates a 'fair probability' that the images are lascivious." <u>Hill</u>, 459 F.3d at 972.

10   And, the magistrate's finding is entitled to great deference.

11           **2.**     **SA Dugan's Training And Experience And The Caselaw Support The
"Fair Probability" That Wilson's Computer And Email Account**

12                 **Would Contain Child Pornography.**

13       Wilson argues that there is no evidence "the pictures would remain on the computer more

14   than ten months after they were sent." <u>See</u> Defendant's Motion at 11:13-15.  Presumably,

15   Wilson is arguing that the facts establishing probable cause were "stale" at the time the warrants

16   were issued.  Again, however, the magistrate's finding of probable cause is entitled to great

17   deference, and the government is required only to establish that there is a "fair probability" that

18   evidence will be discovered in the locations to be searched.

19       In this regard, Wilson completely ignores the portion of SA Dugan's affidavits describing

20   his training and experience related to child pornography cases.  SA Dugan describes how

21   computers can store hundreds of thousands of images, and how electronic information can

22   remain on computers and electronic storage media for an indefinite period of time.  Affidavit at

23   ¶¶ 12, 15.  SA Dugan also describes how email subscribers may store files, including emails and

24   images, on servers owned by the email ISP (<u>i.e.</u>, AOL).  Affidavit 2 at ¶¶ 14(d) - (g).[6]  SA Dugan

25   further describes how records deleted from a computer can still exist and be recovered through

26   forensic analysis.  Affidavit at ¶¶ 12, 16.  Furthermore, SA Dugan describes how image files

27    

28         [6]The Affidavit In Support Of Application For Search Warrant for Wilson's AOL Account
("Affidavit 2") is attached to Defendant's Motion as Exhibit I.

1  containing child pornography can be maintained for long periods of time on a computer and

2  "[m]ost often the collector maintains the files purposefully." Id. at ¶ 16.

3       Moreover, the caselaw, including that cited by Wilson himself, supports the conclusion

4  that the computer and/or email account will still contain child pornography:

5       The observation that images of child pornography are likely to be hoarded by persons
        interested in those materials in the privacy of their homes is supported by common sense
6       and the cases. Since the materials are illegal to distribute and possess, initial collection is
        difficult. Having succeeded in obtaining images, collectors are unlikely to destroy them.
7       Because of their illegality and the imprimatur of severe social stigma such images carry,
        collectors will want to secret them in secure places, like a private residence. This
8       proposition is not novel in either state or federal court: pedophiles, preferential child
        molesters, and child pornography collectors maintain their materials for significant
9       periods of time.

10  United States v. Riccardi, 405 F.3d 852, 861 (10th Cir. 2005)(internal quotations and citations

11  omitted); see also, United States v. Lacy, 119 F.3d 742, 746 (9th Cir. 1997). In Lacy (cited by

12  Wilson), the search warrant affidavit stated that the defendant had downloaded two images of

13  child pornography approximately 10 months prior to issuance of the search warrant. Id. Based

14  on her training and experience, the affiant explained that collectors and distributers of child

15  pornography value their collections, rarely dispose of the material, and maintain the images for

16  long periods of time. Id. Although the Lacy Court was unwilling to believe that collectors

17  maintained child pornography forever, the Court found the evidence sufficient to believe that the

18  computerized visual depictions would be present in the defendant's apartment 10 months after he

19  downloaded them. Id.

20       Here, Wilson had emailed the images to "BlondeeBrit13" approximately 9 months before

21  the search warrants were issued in October 2007. In September 2007, Wilson admitted to

22  sending the images, one of which he believed depicted a 10 year-old girl, to "BlondeeBrit13"

23  from the "Eyemkinkyru2" email account. Affidavit at ¶ 21(a). Additionally, Wilson described in

24  detail his explicit online chat habits, including: (1) his use of the "Eyemkinkyru2" screen name

25  and email account (Affidavit at ¶ 21(a)); (2) his frequenting of chat rooms with sexually explicit

26  names (Id. at ¶ 21(c)); (3) his practice of exchanging pictures of himself for pictures of the other

27  chat participants (Id.); and (4) his practice of requesting the "age, sex, and location" of

28  individuals with whom he was chatting (Id.). And, Wilson admitted to storing pictures of

1   "attractive" girls between the ages of 16 and 35 on his computer – the only computer in the

2   residence – and to receiving pictures of pre-teens. Id. at ¶ 21(b). He also stated that he had

3   pictures on his computer that he did not want to show to the agents. Id.

4          Read fairly with SA Dugan's description of how, in his training and experience, image

5   files containing child pornography can be maintained for long periods of time on a computer and

6   "[m]ost often the collector maintains the files purposefully," the affidavits set forth a "fair

7   probability" that child pornography would be found on Wilson's computer and in his email

8   account. Furthermore, Wilson's description of his online chat habits and practices, and his

9   admission that he sent the images containing child pornography to "BlondeeBrit13," set forth a

10  "fair probability" that child pornography would be found in his email account.

11         **B.    SA Dugan Relied In Good Faith On The Search Warrants.**

12         Regardless of whether this Court, conducting an after-the-fact review of the search

13  warrants, concludes that probable cause was lacking, the evidence gathered in the searches is still

14  admissible because the executing agents relied in good faith on the validity of the search

15  warrants. United States v. Leon, 468 U.S. 897 (1984)(holding that the good faith exception to

16  the exclusionary rule should apply where law enforcement officers acted in good faith and in

17  reasonable reliance on a facially valid search warrant). Ordinarily, searches "pursuant to a

18  warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a [court]

19  normally suffices to establish that a law enforcement officer has acted in good faith in conducting

20  the search." Id. at 922 (citations and quotations omitted). Nevertheless, an officer's reliance on

21  the issuing court's probable cause determination must be objectively reasonable. Id. "An officer

22  does not manifest objective good faith in relying on a warrant based on an affidavit that is so

23  lacking in indicia of probable cause that official belief in its existence is entirely unreasonable."

24  United States v. Fowlie, 24 F.3d 1059, 1067 (9th Cir. 1994) (citing Leon, 468 U.S. at 923).

25         Here, as previously explained, the affidavits set forth facts that established that there was

26  a fair probability that evidence of the possession and distribution of child pornography would be

27  discovered in Wilson's computer and AOL email account. At the very least, however, the

28  affidavits established a "plausible theory" that evidence might be found, which is sufficient for

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE
No. CR-08-00262-SBA                    18

1    application of the good faith exception. See Fowlie, 24 F.3d at 1067 (unnecessary to decide

2    whether probable cause existed to search defendant's ranch because officers reasonably relied on

3    affidavit containing plausible theory that ranch used as "safe house" for drug distribution).

4         In order for this Court to find that reliance on the search warrants was objectively

5    unreasonable, the affidavits would have needed to have "no hint" of information from which a

6    reasonable judge could have found probable cause. See United States v. Hove, 848 F.2d 137,

7    139-40 (9th Cir. 1988)(finding no good faith where the affidavit did not link the search location

8    to the defendant, did not explain why the police might find incriminating evidence at the

9    location, and "simply list[ed]" the location as a place to be searched).  The affidavits in this case

10   contained far more than a "hint" of probable cause.

11        Finally, the underlying purpose of excluding evidence obtained during a search lacking

12   probable cause would not be advanced by the suppression of evidence in this case.  As the Leon

13   Court noted when setting forth the good faith exception to the exclusionary rule, the purpose of

14   the exclusionary rule is to deter police investigators from willfully infringing upon a defendant's

15   rights by conducting unlawful searches. See Leon, 468 U.S. at 918-19.  Here, SA Dugan

16   conducted a nine-month investigation, which included:  a consensual interview of Wilson during

17   which Wilson made several incriminating admissions and consented to the search of his

18   computer and email account; warrants issued by a detached and neutral judge; and the execution

19   of the warrants that were obtained.  The deterrent purpose of the exclusionary rule would not be

20   furthered by excluding evidence obtained by the FBI agents who, in good faith, followed the

21   procedures to obtain search warrants.

22        Thus, because SA Dugan obtained warrants from a proper judicial authority and the

23   warrants contained no obvious deficiencies that would have alerted him that probable cause was

24   lacking or that the issuing judge did not perform his neutral and objective function, SA Dugan

25   and the other executing agents and officers were entitled to rely on the warrants.  Accordingly,

26   this Court should deny Wilson's motion on the separate and independent ground that the agents

27   in this case acted in good faith reliance on the search warrants.

28

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE
No. CR-08-00262-SBA                                         19

C.   **Defendant Has Failed to Establish That SA Dugan Made a False or Deliberately Misleading Statement Or Omission.**

Under Franks v. Delaware, 438 U.S. 154 (1978), a defendant can attack the validity of a search warrant affidavit if, and only if, he or she shows that the affiant intentionally or recklessly made a materially false statement.  In applying Franks, the Ninth Circuit has identified five requirements that a defendant must meet to obtain a hearing, namely, the defendant must:  (1) allege specifically which portions of the affidavit are allegedly false; (2) assert that the false statements or omissions were made deliberately or recklessly; (3) present a detailed offer of proof, including affidavits, to support these allegations; (4) challenge only the veracity of the affiant; and (5) challenge statements that are necessary to find probable cause.  United States v. Jaramillo-Suarez, 950 F.2d 1378, 1387 (9th Cir. 1991); see also United States v. DiCesare, 765 F.2d 890, 894-95, amended, 777 F.2d 543 (9th Cir. 1985).  The defendant bears the burden of making "a substantial preliminary showing" that all of these elements are met by a preponderance of the evidence.  See United States v. Hammett, 236 F.3d 1054, 1058 (9th Cir. 2001); see also United States v. Dozier, 844 F.2d 701, 705 (9th Cir. 1988).  If the challenged statements are not necessary to find probable cause, then the defendant is not entitled to an evidentiary hearing.  See Fowlie, 24 F.3d at 1066-67; United States v. Motz, 936 F.2d 1021, 1024 (9th Cir. 1991).

Here, in support of his request for a Franks hearing, Wilson singles out one statement in SA Dugan's affidavits and concludes that it was knowingly false without any evidence to support the accusation.  In his affidavits, SA Dugan stated: Wilson "admitted that he uses AOL to access the Internet, to participate in explicit online chats, and to send and receive images of minors engaged in sexually explicit conduct."  Affidavit at ¶ 21(a).

Clearly, this was an effort to summarize the admissions Wilson made – most of which are independently detailed in the affidavits as well – during the interviews with SA Dugan.  In summary, Wilson stated:

(1)    He used his "Eyemkinkyru2"[7] email address to send three pictures of minor girls engaging in sexual acts to "BlondeeBrit13," including: one photo of a minor girl holding a dildo; one photo of a minor girl posed in a sexually suggestive manner on a chair, focusing on her underwear and genitalia or pubic area beneath her skirt; and one photo of a naked, minor female posed in a sexually suggestive manner, focusing on her genitalia or pubic area. Affidavit at ¶ 21(a).

(2)    He believed the naked girl posed in a sexually suggestive manner, in which the photo focused on her genitalia or pubic area, was 10 years-old. Id.

(3)    He received pictures of "attractive" girls between the ages of 16 and 35 years-old and pictures of pre-teen girls, and that he had pictures of 16 year-olds on his computer. He also stated that he had pictures on his computer that he did not want to show the agents. Id. at ¶ 21(b).

(4)    He frequented chat rooms with sexually explicit names on AOL, and he exchanged pictures with girls who were under 18. Additionally, he chatted with people who were possibly under the age of 13. Id. at ¶ 21(c); Dugan Decl. ¶ 8.

(5)    He typically exchanged pictures of himself for pictures of other chat participants; he typically requested the chat participants' "age, sex, and location;" he had a detailed picture rating system in which pictures of a clothed torso received a "G" rating, pictures of a girl wearing a bra and panties received a "R" rating, and naked pictures received a "X" rating. Id. at ¶ 21(c); Dugan Decl. ¶ 8.

(6)    All of the "inappropriate" pictures on his computer were received from other AOL users. Dugan Decl. ¶ 8.

Additionally, during the online chat itself, Wilson stated that he had pictures of kids the same age as "BlondeeBrit13" engaged in sexual acts. Dugan Decl. ¶ 4, Exh. A.[8] Taken together, it is clear that SA Dugan's statement is both accurate and a summary of all of Wilson's incriminating admissions. Wilson is simply not entitled to a Franks hearing based on what is at worst an awkwardly stated, but accurate, summary statement, and thus fails to make the required substantial showing. Moreover, even if this summary statement was deleted from the affidavits, the sum of Wilson's individual admissions, which are independently detailed in the affidavits,

---

[7]Wilson also points out that the September 5, 2007 interview report makes no mention of the "Jconc7" screen name. Defendant's Motion at 6: n. 4. On September 7, 2007, Wilson signed the "Consent to Assume Online Presence" indicating that his "online presence" included "Eyemkinkyru2@aol.com" and "Jconc7@aol.com." Dugan Decl. ¶ 14, Exh. C.

[8]Again, although SA Dugan did not have a copy of the chat at the time he interviewed Wilson or at the time he prepared the affidavits in support of the applications for search warrants in this case, he had a written "lead" from the Cleveland Division, which stated that "Eyemkinkyru2" had advised during that chat that he had pictures of kids the same age as the undercover engaging in sexual acts. Dugan Decl. at ¶ 4.

1    are sufficient to support a finding of probable cause.  See DiCesare, 765 F.2d at 894-95

2    (affirming the denial of a Franks hearing because "[e]ven without [the challenged] statements in

3    the affidavit, we conclude that the other allegations in the affidavit supported a finding of

4    probable cause").

5         Wilson also complains that the affidavit omits that his computer was taken without a

6    warrant and in violation of the Fourth Amendment.  First, it is readily apparent from the first

7    paragraph of the affidavit, which states "The SUBJECT COMPUTER is in the government's

8    possession," that the government had seized the computer.  Affidavit at ¶ 1.  Additionally,

9    Attachment A to the search warrant, states that the computer is located in the FBI's evidence

10   room.  Second, the argument that the computer was taken in violation of the Fourth Amendment

11   is a legal conclusion with which the government does not agree.  This omission, therefore, does

12   not nearly rise to the level of a deliberate or reckless omission, which would entitle Wilson to a

13   Franks hearing.

14        Finally, Wilson complains that SA Dugan's affidavit does not include the information

15   about AOL's retention policies that Wilson attaches to his motion.  See Defendant's Motion at

16   Exhibit J.  To start, Wilson makes no allegation this alleged omission was intentional or

17   malicious.  Secondly, Wilson provides no information about from where these purported

18   retention policies came or to what these purported policies apply; rather, the policies are merely

19   appended to Wilson's motion.  Regardless, the retention policies make no mention of emails or

20   files saved by AOL users; nothing in the retention policies contradicts SA Dugan's statement

21   that, based on his training and experience and discussions with other agents, "[a] subscriber can

22   store files, including e-mails and image files, on servers maintained and/or owned by the e-mail

23   ISP."  Affidavit 2 at ¶ 14(f).  Again, therefore, this alleged omissions would not entitle Wilson to

24   a Franks hearing.

25   **IV.    THE SEARCH OF WILSON'S COMPUTER DID NOT VIOLATE RULE 41.**

26        Wilson argues that the search of his computer was done in violation of Rule 41 of the

27   Federal Rules of Criminal Procedure because it took longer than 10 days.  Wilson's argument

28   ignores the fact that Attachment C to the search warrant, as with all search warrants for

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE
No. CR-08-00262-SBA                          22

1  computers in the Northern District of California, allows the government to "complete an off-site

2  search of a device . . . no later than 30 calendar days after initial execution of the warrant." <u>See</u>

3  Defendant's Motion, Exhibit D. Additionally, the warrant allows that "deadlines set forth in this

4  paragraph may be extended by court order for good cause shown." <u>Id.</u>

5       Here, the FBI submitted Wilson's computer to the forensic laboratory on October 25,

6  2007 – three days after the search warrant was authored. Defendant's Motion at 14 n. 6. On

7  November 19, 2007, the government sought and received an extension of the 30-day time period

8  to complete the off-site search of Wilson's computer, requiring that the search be completed by

9  December 31, 2007. <u>See</u> Exhibit 1 to this Opposition. The aged model of Wilson's computer

10 required special software to allow for analysis, which elongated the time required for the full

11 search. Dugan Decl. ¶ 18. On November 30, 2007, within the extended time period, the FBI

12 received a DVD from the lab containing the hundreds of images and several videos depicting

13 child pornography from the laboratory. Thus, the search of Wilson's computer was completed

14 within the extended time period authorized by the search warrant.

15       Furthermore, even if the search was conducted in violation of Rule 41, if the violations

16 are not of constitutional magnitude, then "violations of Rule 41 alone should not lead to

17 exclusion unless (1) there was 'prejudice in the sense that the search might not have occurred or

18 would not have been so abrasive if the Rule had been followed, or (2) there is evidence of

19 intentional and deliberate disregard of a provision in the Rule.'" <u>United States v. Crawford</u>, 657

20 F.2d 1041, 1047 (9th Cir. 1981), <u>see also</u>, <u>United States v. Williamson</u>, 439 F.3d. 1125, 1133 (9th

21 Cir. 2006). Here, there is no evidence that Wilson was prejudiced or that the government

22 intentionally disregarded the rule. To the contrary, there is evidence that the government

23 meticulously complied with the computer search protocol included as part of the warrant, and

24 sought and received an extension of the 30-day deadline set forth therein.

25       With respect to the 10-day time period in Rule 41, courts have noted that the purpose is to

26 prevent probable cause from dissipating after issuance of the search warrant, but before the

27 search can be conducted. <u>United States v. Crim. Triumph Capital Group</u>, 211 F.R.D. 31, 66 (D.

28 Conn 2002). In computer search cases, however, the practice of making of a "mirror image"

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE
No. CR-08-00262-SBA                          23

1   (i.e., exact electronic copy) of the hard drive freezes the evidence in time and prevents the

2   dissipation of probable cause while the complex and technical search is completed. Id. This,

3   therefore, alleviates the concern addressed by Rule 41. Id. In this instant case, both the seizure

4   of Wilson's computer and the making of a "mirror image" prevented any dissipation of the

5   probable cause and alleviated the concern addressed by the 10-day time period in Rule 41.

6                                      **CONCLUSION**

7          Based upon the above, the United States respectfully requests that the Court deny

8   Wilson's motion to suppress the computer seized from his home and the evidence recovered

9   therefrom based upon: (1) the valid exceptions to the warrant requirement; (2) Wilson's consent

10  to search the computer; (3) the search warrant supported by probable cause; and (4) SA Dugan's

11  good faith reliance on that search warrant.  Additionally, the United States respectfully requests

12  that the Court deny Wilson's motion to suppress the evidence recovered from Wilson's email

13  account based upon: (1) Wilson's consent to search the email account; (2) the search warrant

14  supported by probable cause; and (3) SA Dugan's good faith reliance on that search warrant.

15

16  DATED: August 26, 2008                    Respectfully submitted,

17                                            JOSEPH P. RUSSONIELLO
                                             United States Attorney
18

19

20                                           JAMES C. MANN
                                             Assistant United States Attorney
21

22

23

24

25

26

27

28

# EXHIBIT 1

ORIGINAL
FILED

07 NOV 19 PM 3:33

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1   SCOTT N. SCHOOLS (SC 9990)
    United States Attorney
2
    BRIAN J. STRETCH (CABN 163973)
3   Chief, Criminal Division

4   JAMES C. MANN (CABN 221603)
    Assistant United States Attorney
5
        1301 Clay Street, Suite 340-S
6       Oakland, California 94612
        Telephone:  (510) 637-3705
7       Facsimile:  (510) 637-3724
        E-Mail:     James.C.Mann@usdoj.gov
8
9   Attorneys for Plaintiff

10                 UNITED STATES DISTRICT COURT

11                NORTHERN DISTRICT OF CALIFORNIA

12                       OAKLAND DIVISION

13

14  In Re Search Of Apple Tower Computer   )   No.  4 - 07 - 70614
15  Marked As Part Number 620-1100-8AC     )
    And Bar Code JK7274964TQA And The      )   UNITED STATES' APPLICATION FOR
16  Iomega Zip 100 Drive With A Zip Disk    )   EXTENSION OF TIME TO EXAMINE
    Located Inside                          )   SEIZED COMPUTER EVIDENCE;
17                                          )   [PROPOSED] ORDER
                                            )
18                                          )   Date:
                                            )   Time:
19  _____)

20          The United States of America, by and through Assistant United States Attorney James C.

21  Mann, hereby applies for an order extending by 36 days the time within which the government

22  may examine seized computer evidence to determine whether it contains data that falls within

23  any of the "items to be seized," or is otherwise legally seized, pursuant to the above-captioned

24  search warrant.  The grounds for this application are based on information received from the

25  agents investigating the matter from the Federal Bureau of Investigation.

26          Based on information provided to the United States Attorney's Office for the Northern

27  District of California, because the computer at issue is an older model Apple computer, the FBI's

28  Silicon Valley Regional Computer Forensic Laboratory ("RCFL") in Menlo Park

I hereby certify that the annexed
instrument is a true and correct copy
of the original on file in my office.
ATTEST:
        RICHARD W. WIEKING
Clerk, U.S. District Court
Northern District of California
By: _____
                    Deputy Clerk
Date: _____11-19-07

APP. FOR EXT. OF TIME TO EXAMINE COMPUTER EVIDENCE

forensic examination program different from the program that is typically used to analyze the

computer in this matter. The forensic examination program used in this instance requires more

time to operate than the typical program, and requires the RCFL examiner to do more review and

analysis than is typical. Additionally, because the computer at issue is an older model, more time

than usual is required for analysis. The United States requests that an extension in the amount of

36 days be granted such that FBI agents may review the images by December 31, 2007.

### APPLICATION

The United States is investigating possible possession, receipt, and distribution of child

pornography by Danny J. Wilson ("WILSON") in violation of 18 U.S.C. §§ 2252 and 2252A.

Specifically, during an online undercover session on January 16, 2007, WILSON emailed three

pictures of minor girls engaged in sexual acts or posed in sexual positions to an undercover

person ("UC") posing as a minor. On September 5, 2007, Special Agents from the FBI

conducted a consensual interview of WILSON at his residence during which he admitted that he

sent the aforementioned photos. He further admitted that he believed one of the minors depicted

in the aforementioned photos to be ten years old. WILSON further stated that his computer

contained pictures he did not want to show the Special Agents. He stated that he received

pictures of "attractive" girls between the ages of 16 and 35, which were contained on his

computer. WILSON consented to the search of his computer.

In connection with this investigation, the United States sought and obtained search

warrants for WILSON's email account and computer. United States Magistrate Judge Edward

M. Chen signed the search warrants on October 22, 2007. Since that time, the FBI has completed

the examination of WILSON's email account and discovered at least three videos that appear to

depict minor children engaged in sexual acts.

On October 25, 2007, the FBI submitted WILSON's computer to the RCFL for

examination. Because the computer is an older model Apple computer, a different forensic

examination program than that which is typically used was required. The RCFL examiner began

examination of the computer on November 13, 2007. Again, the forensic examination program

used requires more time to operate than the typical program; likewise, it requires greater review

APP. FOR EXT. OF TIME TO EXAMINE COMPUTER EVIDENCE

1   and analysis by the RCFL examiner. The aged model of the computer has also slowed the

2   forensic examination process. Therefore, approximately 65% to 70% of the forensic examination

3   has been completed to date. The RCFL examiner currently estimates that the forensic

4   examination and analysis will be completed by December 12, 2007, such that the data can be

5   returned to the FBI for review and analysis.

6       The relevant provision of the search warrant for the computer at issues provides:

7       The government must complete an off-site search of a device that agents removed
        in order to search for evidence of crime as promptly as practicable and no later

8       than 30 calendar days after the initial execution of the warrant. Within thirty
        calendar days after completing an off-site search of a device pursuant to this

9       warrant, the government must return any device, as well as any related equipment
        or document that was removed from the site in order to complete the search,

10      unless, under the law, the government may retain the device, equipment, or
        document (1) to preserve evidence, or (2) because the device, equipment, or

11      document is contraband, a forfeitable instrumentality of the crime, or fruit of
        crime. Within a reasonable period, not to exceed sixty calendar days after

12      completing the authorized search of a device, the government also must use
        reasonable efforts to destroy — and to delete from any devices or storage media or

13      copies that it has retained or made — copies of any data that are outside the scope
        of the warrant but that were copied or accessed during the search process, unless,

14      under the law, the government may retain the copies (1) to preserve evidence, or
        (2) because the copies are contraband, a forfeitable instrumentality of the crime, or

15      fruit of crime. The deadlines set forth in this paragraph may be extended by court
        order for good cause shown.

16

17      As set forth above, the United States seeks this 36-day extension for good cause and not

18   for delay.

19

20   DATED: November 19, 2007          Respectfully submitted,

21                                     SCOTT N. SCHOOLS
                                       United States Attorney

22

23

24                                     JAMES C. MANN
                                       Assistant United States Attorney

25

26

27                  [PROPOSED] ORDER

28      Good cause appearing therefor, IT IS HEREBY ORDERED that the time within which the

APP. FOR EXT. OF TIME TO EXAMINE COMPUTER EVIDENCE

1    government may examine the computer images recovered from the Apple Tower Computer

2    Marked As Part Number 620-1100-8AC And Bar Code JK7274964TQA And The Iomega Zip

3    100 Drive With A Zip Disk Located Inside to determine whether they contain items to be seized

4    as set forth in the search warrant is extended by 36 days to December 31, 2007.

5

6    DATED:    November 19, 2007

7

8    HONORABLE BERNARD ZIMMERMAN
     UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

APP. FOR EXT. OF TIME TO EXAMINE COMPUTER EVIDENCE

DJW—0197

# EXHIBIT A

**Begin IM - 1/16/2007 04:58 PM**

Eyemkinkyru2 [4:58 P.M.]: hi what's going on? whatcha up to?
37 m sf bay area cali
BlondeeBrit13 [04:58 PM]: hi
BlondeeBrit13 [04:59 PM]: f/oh/13
Eyemkinkyru2 [04:59 PM]: ohhhh really
BlondeeBrit13 [04:59 PM]: yes
Eyemkinkyru2 [04:59 PM]: are you home alone feelin' a lil bit horny? wanna play?
Eyemkinkyru2 [05:00 PM]: do you have any sexy self-pics to trade?
BlondeeBrit13 [05:00 PM]: wat kind do u have
Eyemkinkyru2 [05:01 PM]: rated g and one x
BlondeeBrit13 [05:01 PM]: of
Eyemkinkyru2 [05:01 PM]: me
Eyemkinkyru2 [05:01 PM]: plus i have lots of others of all types
BlondeeBrit13 [05:01 PM]: oh
BlondeeBrit13 [05:01 PM]: others like wat
Eyemkinkyru2 [05:02 PM]: all types
Eyemkinkyru2 [05:02 PM]: why......is there any type in particular that you wanna see?
BlondeeBrit13 [05:04 PM]: hum like guys say they got all kind likes girls all age
Eyemkinkyru2 [05:04 PM]: yes i do
BlondeeBrit13 [05:04 PM]: like wat age
Eyemkinkyru2 [05:05 PM]: yng
BlondeeBrit13 [05:05 PM]: like ma age
Eyemkinkyru2 [05:05 PM]: mail of me
Eyemkinkyru2 [05:05 PM]: uh huh
BlondeeBrit13 [05:05 PM]: k
Eyemkinkyru2 [05:06 PM]: why?
Eyemkinkyru2 [05:06 PM]: is that what you wanna see, girls ur age?
BlondeeBrit13 [05:06 PM]: u wanted self to trade
Eyemkinkyru2 [05:07 PM]: yes......but do you have any others too?
Eyemkinkyru2 [05:07 PM]: i sent you mine already though
BlondeeBrit13 [05:08 PM]: oh i thought u had my age
Eyemkinkyru2 [05:08 PM]: like i said yes i do
Eyemkinkyru2 [05:08 PM]: but sent you mine first
Eyemkinkyru2 [05:08 PM]: what do you have to trade?
BlondeeBrit13 [05:09 PM]: yeah
BlondeeBrit13 [05:09 PM]: slef pic of same age
Eyemkinkyru2 [05:09 PM]: are you home alone and horny to play online with an older guy like me babygirl?
Eyemkinkyru2 [05:09 PM]: oic
Eyemkinkyru2 [05:09 PM]: are any of ur self-pics naughty?
BlondeeBrit13 [05:10 PM]: lol yeah
Eyemkinkyru2 [05:10 PM]: cuz i have pics ur age of normal and naughty
Eyemkinkyru2 [05:10 PM]: can u send me one
BlondeeBrit13 [05:10 PM]: if u trade and send first
BlondeeBrit13 [05:10 PM]: b/c i been tricked b4
Eyemkinkyru2 [05:10 PM]: i totally understand......cuz so have i.....way too many times babydoll
BlondeeBrit13 [05:12 PM]: k and
Eyemkinkyru2 [05:12 PM]: i'm putting a few in mail for you now
Eyemkinkyru2 [05:12 PM]: can u send me urs attached though
BlondeeBrit13 [05:12 PM]: if u send lst
Eyemkinkyru2 [05:13 PM]: yes i will
BlondeeBrit13 [05:13 PM]: then i will i have like 10 me in gf took peing silly
Eyemkinkyru2 [05:13 PM]: bet patient cuz my puter is old n slow k
Eyemkinkyru2 [05:14 PM]: mmmm wow.....and you'll send em attached
Eyemkinkyru2 [05:14 PM]: are you and ur gf naked n being silly with each other in any of them hehehe

DJW-0198

BlondeeBrit13 [05:14 PM]: yeah
Eyemkinkyru2 [05:14 PM]: wow hot
Eyemkinkyru2 [05:14 PM]: ok first few sent
BlondeeBrit13 [05:15 PM]: those r older den me
Eyemkinkyru2 [05:15 PM]: not too much
BlondeeBrit13 [05:15 PM]: not ma age plus i seen them b4
BlondeeBrit13 [05:15 PM]: lol if ya wanna trade my age lolol
BlondeeBrit13 [05:16 PM]: and you have to make sure not 2 send mine no where else
Eyemkinkyru2 [05:16 PM]: ok.......now are you gonna just trick me
BlondeeBrit13 [05:16 PM]: i wood dide if ma mom found out
Eyemkinkyru2 [05:16 PM]: i would never
BlondeeBrit13 [05:16 PM]: im NOT gonna TRICK u
BlondeeBrit13 [05:16 PM]: i wood die if mom found out and her mom 2
Eyemkinkyru2 [05:16 PM]: ok then send me at least one
BhndeeBrit13 [05:17 PM]: if ya send me 1 my age so i no ur not gonna trick me
BlondeeBrit13 [05:17 PM]: those girls look like high skool girls here
Eyemkinkyru2 [05:18 PM]: ok
BlondeeBrit13 [05:18 PM]: u better hurry b4 ma mom gets home
BlondeeBrit13 [05:18 PM]: i have mins hiddden in my book bag ona disk
Eyemkinkyru2 [05:18 PM]: i am tryin
BlondeeBrit13 [05:18 PM]: i will go get them while u send
Eyemkinkyru2 [05:18 PM]: k
Eyemkinkyru2 [05:20 PM]: mail
BlondeeBrit13 [05:21 PM]: no mail yet
BlondeeBrit13 [05:21 PM]: checking
Eyemkinkyru2 [05:21 PM]: k
Eyemkinkyru2 [05:21 PM]: shows you opened
BlondeeBrit13 [05:21 PM]: now got

**End IM - 1/16/2007 05:22 PM**

DJW-0199

# EXHIBIT B

FD-26 (Rev. 7-20-94)

# DEPARTMENT OF JUSTICE

## FEDERAL BUREAU OF INVESTIGATION

### CONSENT TO SEARCH

1. I have been asked by Special Agents of the Federal Bureau of Investigation to permit a complete search of:

   (Describe the person(s), place(s), or thing(s) to be searched.)

   *1 Apple Computer, Missing Case, SN- EN60825*

2. I have been advised of my right to refuse consent.

3. I give this permission voluntarily.

4. I authorize these agents to take any items which they determine may be related to their investigation.

   *09/05/2007*
   _____
   Date

   _____
   Signature

   Witness

   _____
   *Special Agent*

# EXHIBIT C

### CONSENT TO ASSUME ONLINE PRESENCE

I, *Danny J. Wilson*, hereby voluntarily authorize *SA S. Curt Dugan* or other agents of the FBI to take over control of and use my "online presence." This online presence includes the following screen name(s), nick name(s), and/or e-mail addresses, as well as the passwords associated with these accounts:

ACCOUNT NAME

*EYEMKINKYRU2*
*EMAIL - EYEMKINKYRU2@*
*AOL.COM*

*JCONC7@AOL*

PASSWORD

*SAVED ON HARD DRIVE*
*WILL TRY TO FIND*

I consent to the use of my (or my child's) online presence for any purpose relating to an official investigation by the above law enforcement authority, including (but not limited to) sending and receiving e-mail or conducting any other electronic communications, accessing stored information, and using and disclosing such communications or information. I understand and acknowledge that by signing the consent form, I relinquish all present and future claims to the use of these accounts. I understand that law enforcement authorities will change the password(s) to this account so that I will no longer have access. *NOT TO INCUR ANY ADDITIONAL EXPENSE BEYOND 09/21/07* *DJW*

I give this consent freely and voluntarily, without fear, threats, coercion, or promises of any kind. I have been advised of my right to refuse to allow the assumption of my (or my child's) online presence, and I hereby voluntarily waive this right.

Signature: *Danny J Wilson*     Witness: _____

Name (printed): *Danny J. Wilson*   Name (printed): *S. Curt Dugan*

Date: *09/07/07*                                *Special Agent*

Signature of parent/guardian: *n/a*

Name (printed): *n/a*

Date: *n/a*

DJW-014

File # : _____

IIU Fax: 301-586-4547

1    JOSEPH P. RUSSONIELLO (CABN 44332)
     United States Attorney
2
     BRIAN J. STRETCH (CABN 163973)
3    Chief, Criminal Division

4    JAMES C. MANN (CABN 221603)
     Assistant United States Attorney
5
        1301 Clay Street, Suite 340-S
6       Oakland, California 94612
        Telephone:  (510) 637-3705
7       Facsimile:   (510) 637-3724
        E-Mail:      James.C.Mann@usdoj.gov
8

9    Attorneys for Plaintiff

10                    UNITED STATES DISTRICT COURT

11                   NORTHERN DISTRICT OF CALIFORNIA

12                          OAKLAND DIVISION

13   UNITED STATES OF AMERICA,          )    No. CR-08-00262-SBA
                                        )
14            Plaintiff,                )    DECLARATION OF S. CORT DUGAN IN
                                        )    SUPPORT OF GOVERNMENT'S
15        v.                            )    OPPOSITION TO DEFENDANT'S
                                        )    MOTION TO SUPPRESS EVIDENCE
16   DANNY J. WILSON,                   )
                                        )    Date:       September 16, 2008
17            Defendant.                )    Time:       11:00 a.m.
                                        )    Court:      Hon. Saundra Brown
18   _____)                Armstrong

19

20   I, S. Cort Dugan, declare as follows:

21        1.    I have been employed by the Federal Bureau of Investigation ("FBI") as a Special

22   Agent since January 2005.  Since December 18, 2007, I have been assigned to the Counter

23   Terrorism Squad in the San Francisco Division.  Between June 6, 2005 and December 17, 2007, I

24   was assigned to the San Francisco Criminal Cyber Squad, which investigates crimes involving

25   computer intrusions, sexual exploitation of minors, including such exploitation via the Internet

26   and computers, and other computer-related violations.  In my capacity as a Special Agent, I have

27   investigated a variety of violations of federal law, including possession and distribution of child

28   pornography and the sexual exploitation of children.  During the investigation of these cases, I

1    have participated in the execution of search and arrest warrants, and have seized evidence of

2    violations of United States laws.  I have interviewed witnesses and have read official reports of

3    similar interviews by other investigators.

4        2.    I estimate that I have been involved in the investigation of approximately six cases

5    involving the possession and distribution of child pornography over the course of my

6    employment with the FBI.  Additionally, I estimate that I have been involved in approximately

7    six search warrants relating to the possession and distribution of child pornography.

8        3.    I understand this declaration is being submitted in connection with Danny J.

9    Wilson's motion to suppress; accordingly, this declaration is limited to some facts concerning

10   that motion, and does not include all the information I know about defendant or about the

11   investigation underlying this case.

12                      **The Undercover Investigation.**

13       4.    Attached hereto as Exhibit A is a true and correct copy of the transcript of the chat

14   between Danny J. Wilson and "BlondeeBrit13" on January 16, 2007, which was received from

15   the Cleveland Division of the FBI.  At the time that I prepared my affidavits in support of the

16   applications for search warrants in this case, I did not have a copy of the chat transcript.  I did,

17   however, have a written "lead" from the Cleveland Division, which provided Wilson's quote

18   from the chat ("are you home alone and horny to play online with an older guy like me

19   babygirl?"), and stated that "Eyemkinkyru2" had advised during that chat that he had pictures of

20   kids the same age as the undercover engaging in sexual acts.

21                   **The September 5, 2007 Interview Of Wilson.**

22       5.    On September 5, 2007, Special Agent Hans H. Frank of the FBI and I interviewed

23   Wilson at his apartment in Concord, California.  When Wilson answered the door and stepped

24   outside of his apartment to speak to us, I recognized Wilson from the photos he had sent of

25   himself to "BlondeeBrit13" and from his driver's license photo.

26       6.    After agreeing to speak with the us, Wilson began speaking first, stating that he

27   needed to stop chatting online and that he should let fantasies end online.

28

7.      When work conducted by a nearby landscaping crew made it difficult to hear, I asked Wilson if there was a quieter place to talk. Wilson then invited us into his apartment. Wilson asked if he was under arrest, and I explained that he was not under arrest, that the interview was voluntary, and that he was free to leave at any time. Wilson was never handcuffed, and neither my gun, nor Special Agent Frank's gun, was visible at any time.

8.      Wilson stated that he used a Mac computer with a missing case and broken drives, the computer later seized in this case, which was the only computer in the apartment. Wilson stated that he chatted in chat rooms with sexually explicit names on AOL and that he exchanged pictures with girls who were under 18. Wilson stated that he chatted with people possibly under the age of 13. Wilson estimated that he had been chatting in chat rooms for approximately three years. Wilson described in detail his method for exchanging pictures with individuals over the Internet and his practice of requesting the chat participants' "age, sex, and location." Wilson also described a detailed picture rating system in which pictures of a clothed torso received a "G" rating, pictures of a girl wearing a bra and panties received a "R" rating, and naked pictures received a "X" rating. Wilson stated that all inappropriate pictures on his computer were from other AOL users. He stated that the people in the pictures on his computer were 16 years-old.

9.      I showed Wilson some of the photos he had sent to "BlondeeBrit13" on January 16, 2007. Wilson admitted that two of the photos were pictures of him, and that the photo of the naked, erect penis was not a picture of him, but that he sent it to people representing that it was him.

10.     I explained to Wilson that I was taking his computer because it had child pornography on it. Wilson helped me disconnect the cables. I asked Wilson to sign a form consenting to allow FBI agents to assume his online identity, which Wilson refused. I then asked Wilson to sign a form consenting to the search of his computer, to which Wilson agreed. Attached as Exhibit B is a true and correct copy of the "Consent To Search" form signed by Wilson.

11.     Wilson asked several times when he was going to be arrested.

////

DECL. OF DUGAN ISO GOV'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE
No. CR-08-00262-SBA                    -3-

**The September 7, 2007 Interview Of Wilson.**

12.     Approximately three hours after the interview on September 5, 2007, Wilson called me on my mobile telephone and stated that he would like to give us permission to assume his online identity.

13.     On September 7, 2007, Special Agent W. Michael Herrington and I returned to Wilson's residence to allow Wilson to sign the consent form. Wilson again invited us into his apartment. Neither my gun, nor Special Agent Herrington's gun, was visible at any time.

14.     I gave Wilson the consent form and again explained that Wilson's providing of his consent to assume his online identity was completely voluntary. Wilson confirmed, and recalled my previous admonition that the prior interview had been completely voluntary and he could have asked the agents to leave his home at any time. I asked Wilson to read the consent form and to ask any questions he had before signing it. Wilson's only expressed concern was that he not be charged for maintaining his AOL account after it was scheduled to be cancelled on September 21, 2007. Wilson then signed the consent form. Attached as Exhibit C is a true and correct copy of the "Consent To Assume Online Presence" form signed by Wilson.

15.     Wilson again stated that any pictures on his computer were received from other people. And, again, Wilson asked how long it would take for him to be arrested.

**The Search Of Wilson's AOL Account.**

16.     On October 29, 2008, AOL provided me with a CD containing three videos recovered from Wilson's email account. The videos can be described as follows:

a.     The first video file, titled "message001-2 yng girls.mpeg," shows a young girl (who is approximately 12-16 years-old) lying naked on a bed while another person apparently performs oral sex on her.

b.     The second video file, titled "message002-Mia date night.avi," shows a naked young girl with no breast development nor pubic hair (who is approximately 8-10 years-old) fondling her breast and public region.

c.    The third video file, titled "message003-Mia strokes it.avi," shows a naked girl, who is approximately 5 to 8 years-old, performing oral sex on a man; while holding her head in place, the man appears to ejaculate into the girl's mouth.

### The Search Of Wilson's Computer.

17.    On October 25, 2007, I submitted Wilson's computer to the FBI's Silicon Valley Regional Computer Forensic Laboratory for examination.

18.    Because the computer is an older model Apple computer, a different forensic examination program than that which is typically used was required.  The examiner began examination of the computer on November 13, 2007.  The forensic examination program used required more time to operate than the typical program; likewise, it required greater review and analysis by the examiner.  The aged model of the computer also slowed the forensic examination process.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge and belief.  Executed at Oakland, California on August 26, 2008.

S. CORT DUGAN