1  BARRY J. PORTMAN
   Federal Public Defender
2  JOYCE LEAVITT
   Assistant Federal Public Defender
3  555 - 12th Street
   Suite 650
4  Oakland, CA 94607-3627
   Telephone: (510) 637-3500
5
   Counsel for DANNY J. WILSON
6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11 | UNITED STATES OF AMERICA,           ) No. CR 08-00262 SBA
                                         )
12 |                Plaintiff,           ) **DEFENDANT'S REPLY RE: MOTION**
                                         ) **TO SUPPRESS EVIDENCE**
13 | vs.                                 )
                                         ) Date: September 16, 2008
14 | DANNY J. WILSON,                    ) Time: 11:00 am
                                         ) Court: Saundra Brown Armstrong
15 |                Defendant.           )
   |_____)
16
                                **ARGUMENT**
17
   **A.   The Unreasonable Detention Of Mr. Wilson's Computer, After It Was Seized
18        Without A Warrant, Violated The Fourth Amendment**

19        The government does not address Mr. Wilson's argument that the one-and-a-half month

20 detention of his computer, after agents seized it without a warrant and before they obtained a

21 search warrant, was unreasonable and violated the Fourth Amendment. Nor does it offer any

22 explanation for the delay. This detention violated the Fourth Amendment.

23        The facts on which this argument is based are undisputed. The federal agents seized Mr.

24 Wilson's computer without a warrant. Government's Opposition to Defendant's Motion to

25 Suppress Evidence ["Gov't Opp."] at 4, 6. The government does not claim that Mr. Wilson

26 consented to the warrantless seizure of his computer. Gov't Opp. at 4, 6-11; *see also* Declaration

WILSON REPLY RE: SUPPRESSION
No. CR 08-00262 SBA                         1

1  of S. Cort Dugan in Support of Government's Opposition to Defendant's Motion to Suppress
2  Evidence ["Dugan Decl."] ¶ 10 (agent told Wilson he "was taking his computer because it had
3  child pornography on it."). Indeed, Mr. Wilson told the agents that he did not want to show the
4  agents the pictures on his computer. Exhibit A to Defendant's Notice, Motion and Memorandum
5  in Support of Motion to Suppress Evidence ["Def. Mtn"] The government does not dispute that
6  agents seized the computer on September 5, 2007, and failed to obtain a warrant of any kind until
7  October 22, 2007. Gov't Opp. at 3-5. Moreover, the government implicitly admits that the
8  agents did no investigation during the one and a half months from the warrantless seizure of the
9  computer to the obtaining of a warrant to search the computer. *See* Gov't Opp. at 7 ("SA Dugan
10 relied upon the very same facts to determine that there was probable cause to *seize* Wilson's
11 computer as United States Magistrate Judge Chen later relied upon to determine that there was
12 probable cause to *search* Wilson's computer." (emphasis in original)).
13      The cases cited in Mr. Wilson's memorandum establish that the delay was unreasonable.
14 *Cf. United States v. Hall*, 142 F.3d 988, 994-95 (7th Cir. 1998); *cf. also United States v. Martin*,
15 157 F.3d 46, 54 (2d Cir. 1998); *United States v. Respress*, 9 F.3d 483, 488 (6th Cir. 1993) ; *see*
16 *also Martin*, 157 F.3d at 54. Because the government has not established that the agents'
17 detention of Mr. Wilson's computer, which they had seized without a warrant, was reasonable in
18 duration, the seizure violated the Fourth Amendment. All fruits must be suppressed.
19 **B.     The Warrantless Seizure Of the Computer Violated The Fourth Amendment**
20      The government attempts to justify the warrantless seizure of Mr. Wilson's computer
21 under the plain-view or exigent-circumstances exception to the warrant requirement as well as
22 under the inevitable discovery doctrine. Gov't Opp. at 7-11. The government has failed to carry
23 its "heavy burden" of establishing that the case falls within one of the narrow exceptions to the
24 warrant requirement. *United States v. Licata*, 761 F.2d 537, 543 (9th Cir. 1985).
25      **1.     The plain-view exception does not apply to the seizure of the computer**
26      For the plain view exception to apply to the seizure of the computer, the government must

1  establish that (1) the officer was lawfully in the place from which the seized item was in plain
2  view; (2) the incriminating nature of the item seized was immediately apparent; and (3) the
3  officer had a lawful right of access to the item itself. *United States v. Wong*, 334 F.3d 831, 838
4  (9th Cir. 2003).

5  Here, the government has not provided the Court with any facts to establish either that the
6  agent was lawfully in a place from which he viewed Mr. Wilson's computer or that he had lawful
7  access to it. *See Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993). The government says only
8  that Mr. Wilson "invited the FBI agents into his residence." Gov't Opp. at 7; Dugan Decl. ¶ 7.

9  But establishing that the agents entered Mr. Wilson's home with consent does not
10 establish that they were lawfully in a position from which they could view his computer and had
11 a lawful right of access. If, for example, Mr. Wilson led the agents to his living room and the
12 computer was in a closet in his bedroom, the agents may not have been lawfully in a place from
13 which the computer was in plain view and may not have had lawful access to it. The government
14 bears the burden of establishing the elements of the in-plain-view doctrine, and has not done so.

15 Second, the government has not carried it burden of establishing that the incriminating
16 nature of the computer the agents seized was immediately apparent. It is the contents of the
17 computer that are incriminating, not the computer itself. *See, e.g.*, Exhibit B to Def. Mtn. ¶ 1
18 (evidence, fruits, and instrumentalities of federal criminal violations *exists on* Mr. Wilson's
19 computer); *United States v. Carey*, 172 F.3d 1268, 1273 (10th Cir. 1999); *see also United States*
20 *v. Kelley*, 482 F.3d 1047, 1054 (9th Cir. 2007); *United States v. Ogden*, 2008 WL 2247074 at *8
21 (W.D. Tenn. 2008) (unpublished) (same). The government has not established that the
22 incriminating files believed to be on the computer were immediately apparent to the agent.

23 In *Wong*, for example, the Ninth Circuit upheld under the plain-view doctrine a search for
24 child pornography that police discovered while searching the defendant's computer, pursuant to a
25 warrant, for evidence of a murder. 334 F.3d at 838. Here, by contrast, all the agents saw was
26 Mr. Wilson's computer. Agents have presented no evidence that the computer itself, as opposed

1  to its contents, was incriminating.  *See Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993).

2  The government cites no authority for its argument that the plain-view doctrine authorizes
3  warrantless seizures of computers that they believe contain child pornography.  At least one court
4  has noted that this is an "intriguing" and undecided issue, *Carey*, 172 F.3d at 1273, and the Ninth
5  Circuit repeatedly has declined to address plain-view arguments in this context.  *See, e.g.*, *United*
6  *States v. Giberson*, 527 F.3d 882, 889 (9th Cir. 2008); *United States v. Comprehensive Drug*
7  *Testing, Inc.*, 513 F.3d 1085, 1112 n.48 (9th Cir. 2008); *United States v. Beusch*, 596 F.2d 871,
8  877 (9th Cir. 1979).  The dissenting judge in *Comprehensive Drug Testing* did discuss – and
9  reject – the argument that agents properly seized a computer under the plain-view doctrine.  513
10  F.3d at 1116, 1144-47 (Thomas, J., concurring in part and dissenting in part).  As the government
11  acknowledged in that case, and here, it is no easy matter to examine data stored on a defendant's
12  computer.  *Id.*; *see also, e.g.*, Exhibit 1 to Gov't Opp. at 2 (seeking extension of time and
13  explaining the difficulties and complications with the "forensic examination program").

14  Even if the exception were to apply generally, the government has not provided the Court
15  with necessary facts to support application of the plain-view exception in this case.

16  **2.    The exigent-circumstances exception does not apply**

17  The exigent-circumstances exception to the warrant requirement requires the government
18  to establish both probable cause for the seizure and exigencies justifying a warrantless seizure.
19  *Licata*, 761 F.2d at 540.  Exigent circumstances would lead agents, acting in good faith,
20  reasonably to believe from the totality of the circumstances that "evidence or contraband will
21  imminently be destroyed" or (b) the nature of the crime or character of the suspect poses a risk of
22  danger.  *United States v. Ojeda*, 276 F.3d 486, 488 (9th Cir. 2002); *see also Coolidge v. New*
23  *Hampshire*, 403 U.S. 443, 455 (1971); *Licata*, 761 F.2d at 543 .  "[N]o exigency is created
24  simply because there is probable cause to believe that a serious crime has been committed."
25  *Welsh v. Wisconsin*, 466 U.S. 740 (1984).

26  The government does not claim, and the record includes no evidence, that Mr. Wilson or

1  his computer posed a danger to anyone. The only exigent circumstance the government identifies
2  here is that it "has been commonly accepted that data contained on a computer is fluid and easily
3  destroyed." Gov't Opp. at 10. The government thus posits that Mr. Wilson could have "quickly
4  began [sic] destroying evidence" if the computer had been left with him. Gov't Opp. at 10. The
5  record in this case does not support this assertion.[1]

6  The government offers no specific facts to indicate that Mr. Wilson would destroy
7  evidence on his computer. *Cf. Licata*, 761 F.2d at 544. It has not provided any information
8  about how long it would have taken to obtain a warrant or whether one of the agents could have
9  waited while the other sought a warrant. *See, e.g.*, *Illinois v. McArthur*, 531 U.S. 326, 328
10 (2001) (upholding exclusion of defendant from his home for two hours while agents obtained
11 warrant). The government's claim that computer data is "fluid and easily destroyed," Gov't Opp.
12 at 10, conflicts with Agent Dugan's statements in the search warrant affidavit about the
13 persistence of electronic information on computer storage media and the government's ability to
14 recover even deleted data. Exhibit A to Def. Mtn ¶¶ 11, 12, 15, 16.

15 The timing of the government's investigation and its excessive delay in seeking a warrant
16 to search the seized computer also weigh against any finding of exigency. The on-line chat with
17 an undercover agent and the sending of pictures of minor girls to the agent occurred in January
18 2007. Agents did not contact Mr. Wilson until nine months later. After they seized his computer
19 without a warrant, they did not obtain a warrant to search for another month and a half.

20 In assessing the legality of a warrantless seizure, an important factor is whether the police
21 diligently pursued their investigation. *United States v. Place*, 462 U.S. 696, 709 (1983) (90-
22 minute warrantless seizure of luggage unreasonable); *see also McArthur*, 531 U.S. at 332. The

---

[1] The government also is misleading in its citation of *United States v. Giberson*, 527 F.3d 882 (2008). Gov't Opp. at 10. The language it quotes from that case actually is itself a quotation from *United States v. Hill*, 459 F.3d 966, 978 (9th Cir. 2006), and it refers not to the risk of destruction of computer evidence but to concealment of files within a computer. *Giberson*, 527 F.3d at 889.

WILSON REPLY RE: SUPPRESSION
No. CR 08-00262 SBA                    5

1  government offers no explanation for the month-and-a-half delay between the seizure of the
2  computer and the obtaining of a warrant. Under all these circumstances, the warrantless seizure
3  of Mr. Wilson's computer violated the Fourth Amendment.
4        The Ninth Circuit has acknowledged the complex issues surrounding the seizure and
5  search of computers. *See, e.g.*, *Comprehensive Drug Testing,* 513 F.3d at 1106; *United States v.*
6  *Adjani*, 452 F.3d 1140, 1149-52 (9th Cir. 2006). In both of these cases, the government sought
7  and obtained a warrant, supported by a detailed seizure protocol, authorizing agents to seize
8  intermingled evidence stored on a computer. *See Comprehensive Drug Testing*, 513 F.3d at
9  1107-10. When the government has broadly seized computer equipment without adequately
10  explaining why such a wholesale seizure is necessary, the Ninth Circuit has held the warrant
11  overbroad. *See, e.g.*, *United States v. Hill*, 459 F.3d 966, 976 (9th Cir. 2006).
12        In all these cases, however, the agents obtained warrants before seizing the computers.
13  "The essential safeguard is that wholesale removal must be monitored by the judgment of a
14  neutral, detached magistrate." *United States v. Tamura*, 694 F.2d 591, 596 (9th Cir. 1982); *see*
15  *also Comprehensive Drug Testing*, 513 F.3d at 1112; *Hill*, 459 F.3d at 975. In this case, by
16  contrast, the agents did not obtain a warrant to seize Mr. Wilson's computer and failed to carry
17  its burden of establishing an exception to the warrant requirement.
18      **3.**    **The inevitable-discovery exception does not apply**
19        The Supreme Court has recognized an "inevitable discovery" exception to the
20  exclusionary rule. *Nix v. Williams*, 467 U.S. 431, 444 (1984). "The inevitable discovery doctrine
21  applies only when the fact that makes discovery inevitable is borne of circumstances other than
22  those brought to light by the illegal search itself." *United States v. Reilly*, 224 F.3d 986, 995 (9th
23  Cir. 2000). The government bears the burden of proving that the exception applies. *Nix*, 467
24  U.S. at 444; *Reilly*, 224 F.3d at 994.
25        As the government acknowledges, Gov't Opp. at 10, the Ninth Circuit "has never applied
26  the inevitable discovery exception so as to excuse the failure to obtain a search warrant where the

police had probable cause but simply did not attempt to obtain a warrant." *United States v. Mejia*, 69 F.3d 309, 320 (9th Cir. 1995); *see also Reilly*, 224 F.3d at 995. The government contends, however, that this is not such a case because the agents not only could have but "did, in fact, obtain a search warrant (not based upon any evidence gained by the seizure of the computer), following the seizure of Wilson's computer." Gov't Opp. at 10. But this is exactly the type of situation in which the inevitable-discovery exception does not apply.

In *United States v. Satterfield*, 743 F.2d 827, 845-46 (11th Cir. 1984), police investigating a kidnaping unlawfully seized a gun from the defendant's home without a warrant. Several hours later, they obtained a warrant, based on information other than the illegally seized gun, authorizing a search of the home where the gun was found. *Satterfield*, 743 F.2d at 846. The court rejected the government's argument that the illegally seized gun should be admitted because it inevitably would have been discovered during the warrant search. *Id.* The circumstances here are similar to those in *Satterfield*. At the time the agents seized Mr. Wilson's computer without a warrant, they did not have and were not seeking to obtain a warrant. Indeed, they did not obtain a warrant to search the computer for a month and a half after the seizure. Moreover, the warrant here is premised entirely on the government's illegally obtained possession of Mr. Wilson's computer. *See* Exhibit B to Def. Mtn. (seeking and granting authorization to search computer "located in the Evidence Room at the FBI").

In addition, the government has not carried its burden of establishing what steps it would have taken had it not seized Mr. Wilson's computer without a warrant. *See, e.g.*, *Nix*, 467 U.S. at 444; *United States v. Jones*, 72 F.3d 1324, 1334 (7th Cir. 1995) ("Speculation and assumption do not satisfy the dictates of *Nix*." The declaration from Agent Dugan says nothing about what he would have done had he not seized Mr. Wilson's computer without a warrant. Dugan Decl; *cf. United States v. Lang*, 149 F.3d 1044, 1048 (9th Cir. 1998).

The government has offered no reason for its failure to obtain a warrant to seize Mr. Wilson's computer. The Court should suppress the computer and all fruits thereof.

C. **The Government Has Not Established That Mr. Wilson Validly Consented To The Search Of His Computer And His AOL Account**

The government argues that any defects in the search warrants for Mr. Wilson's computer and AOL account are immaterial because he validly consented to both searches. Gov't Opp. at 11-12. Mr. Wilson disagrees. Moreover, the government has offered neither facts nor legal argument to establish that any consent overcame the taint from the prior illegal seizure.

The government "bears the heavy burden of demonstrating that the consent was freely and voluntarily given." *United States v. Chan-Jiminez*, 125 F.3d 1324, 1327 (9th Cir. 1997). "This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority." *Bumper v. North Carolina*, 391 U.S. 543, 548-49 (1968). *United States v. Bautista*, 362 F.3d 584, 589 (9th Cir. 2004) (totality of circumstances). Mr. Wilson disagrees that he was not in custody and the agents therefore did not have to advise him of his *Miranda* rights.

The Ninth Circuit very recently addressed, for the first time, the circumstances under which a person could be found to be in custody, for purposes of *Miranda*, when interrogated at home.[2] *United States v. Craighead*, ___ F.3d ___, 2008 WL 3863709 (No. 07-10135 (9th Cir. Aug. 21, 2008). Here, Mr. Wilson was confronted by two armed federal agents. Dugan Decl. ¶¶ 5, 7. He was isolated from others and there is no indication that they told him that he was free to terminate the interview and have the agents leave his house. He signed the consent form only after the agents had been questioning him for approximately an hour. Exhibit A to Def. Mtn. Under these circumstances, Mr. Wilson was in custody during the interrogation and should have been advised of his *Miranda* rights. *Craighead*, ___ F.3d ___, 2008 WL 3863709 at *12.

There are two facts in this case, both of which the government ignores (but does not

---

[2]Circumstances the court identified as relevant were (1) the number of law enforcement officers and whether they were armed; (2) whether the defendant was restrained by physical force or threats; (3) whether the defendant was isolated from others; and (4) whether the defendant was told the questioning was voluntary and he was free to leave or terminate the interview. *Id.* at **8-11.

WILSON REPLY RE: SUPPRESSION
No. CR 08-00262 SBA                                 8

dispute), that are even more important, however. First, Mr. Wilson initially told the agents that he did not want to show them the pictures he had saved on his computer. Exhibit A to Def. Mtn; Gov't Opp. at 4. Second, Mr. Wilson signed a form consenting to the search of his computer *only after* the agents told him that they were "taking his computer because it had child pornography on it." Dugan Decl. ¶ 10. Once they had his computer, it must have seemed futile to refuse consent for them to search it. *See, e.g. United States v. Jones*, 286 F.3d 1146, 1153 (9th Cir. 2002). These facts indicate that the consent was not voluntary and tainted. The government has not identified any significant intervening time, space or event between the unlawful seizure and the consent. *Bautista*, 362 F.3d at 592. Accordingly, it has not carried its burden of showing that the consent is free of the taint of the illegality.

The government also argues that it need not have obtained a search warrant for Mr. Wilson's AOL account because he consented to the search of his email account. Gov't Opp. at 11-12. For the same reasons discussed above, Mr. Wilson's consent was not freely and voluntarily given.[3] Moreover, the consent form that Mr. Wilson signed (after the agents seized his computer) authorized them only "to take control of and use my 'online presence." Exhibit C to Dugan Decl. This consent, even if valid, does not cover the same information covered by the AOL search warrant. *See* Exhibit H to Def. Mtn (listing categories of "files and accounts to be copied by AOL employees" pursuant to warrant). The government has not carried its burden of establishing that Mr. Wilson validly consented to the search of his AOL account.

D. **The Warrant To Search Mr. Wilson's Computer Was Not Supported By Probable Cause**

   1. **The affidavit does not establish probable cause that the three images are child pornography**

---

[3]Mr. Wilson initially declined to sign the consent form allowing agents to take over his "'online presence.'" Exhibit A to Def. Mtn; Exhibit C to Dugan Decl. Approximately three hours after the agents left his apartment, Mr. Wilson called Agent Dugan and said he would like to consent. Exhibit A to Def. Mtn. Mr. Wilson signed the "Consent To Assume Online Presence" form two days later. Exhibit C to Dugan Decl.

WILSON REPLY RE: SUPPRESSION
No. CR 08-00262 SBA                 9

1  　　　　The government claims that the descriptions in the affidavit of the three pictures are
2  sufficient to establish that they were child pornography because they are of "lascivious exhibition
3  of the genitals or pubic region." Gov't Opp. at 14 (citing 18 U.S.C. ¶ 2256(2)). Courts have
4  recognized that this category of sexually explicit conduct is more subjective and open to
5  interpretation than the other statutory categories. *United States v. Battershell*, 457 F.3d 1048,
6  1051 (9th Cir. 2006); *United States v. Brunette*, 256 F.3d 14, 17 (1st Cir. 2001). Therefore,
7  where a search warrant affidavit is based on pictures that arguably fall under this category, the
8  affiant should provide the images to the magistrate so that she or he may make an independent
9  assessment of probable cause. *Battershell*, 457 F.3d at 1053; *Brunette*, 256 F.3d at 18.
10  "[P]robable cause to issue a warrant must be assessed by a judicial officer, not an investigating
11  agents." *Brunette*, 256 F.3d at 18.
12  　　　　In *Battershell*, the Ninth Circuit held that the description in a search warrant affidavit of a
13  photograph displaying "a young female (8-10 years of age) naked in a bathtub" was insufficient
14  to establish probable cause. 457 F.3d at 1051. And in *Brunette*, an affidavit description of a
15  image stating that it was of a prepubescent boy lasciviously displaying his genitals was
16  insufficient to establish probable cause. 256 F.3d at 19. In these cases, as here, the warrant
17  affidavit established probable cause only if the images were of "lascivious exhibition of the
18  genitals or pubic area." Here, as in those cases, the affidavit did not provide enough information.
19  　　　　The first description says only a "minor girl holding a dildo." The affidavit does not
20  indicate whether the minor is three years old or 17; it does not say anything about how or where
21  she is holding the dildo or in what setting. This description clearly does not qualify as
22  "lascivious exhibition of the genitals or pubic region." Even under the *Dost* factors the
23  government cites, it is not at all clear from this very cursory description "whether *the setting of*
24  *the visual depiction* is sexually suggestive," whether the setting is in a "pose generally associated
25  with sexual activity," or "whether the child is depicted in an unnatural pose . . . *considering the*
26  *age of the child*." Gov't Opp. at 15 (quoting *Hill*, 459 F.3d at 971) (emphasis added).

The second image is described as "a minor girl posed in a sexually suggestive manner on a chair, focusing on her underwear and genitalia or pubic area beneath her skirt." Exhibit C to Def. Mtn ¶ 19.b. Although this description parrots some of the *Dost* factors ("sexually suggestive," focus on the "genitalia or pubic area"), it, too, is notably lacking in specifics. What is the age? What is she wearing? How is her pose "sexually suggestive"? The affidavit does not give the magistrate either the image, itself, or a sufficiently detailed description.

The description of the third image -- "a naked, minor female posed in a sexually suggestive manner, focusing on her genitalia or pubic area" -- is equally sparse. Except for the added information that the female is naked, the description suffers from the same defects as the description of the second image. All three descriptions are a far cry from the detailed information in the affidavit upheld in *Hill*, 459 F.3d at 970-73, and are closer to descriptions found inadequate in *Battershell* and *Brunette*. 457 F.3d at 1051; 256 F.3d at 17.

The government suggests that the magistrate judge, and this Court, properly may defer to Agent Dugan's determination that the images fall within the *Dost* test for "lasciviousness." Gov't Opp. at 16. The court in *Brunette* rejected just such an argument. 256 F.3d at 18.

**2.  The affidavit does not establish probable cause that evidence would be found on the computer when the warrant was issued**

The government relies largely on Agent Dugan's "training and experience," as outlined in the affidavit, in support of its argument that child pornography likely would be found on Mr. Wilson's computer when the warrant issued. Gov't Opp. at 16-18. In this case, at least such reliance would be improper. The affidavit includes very little information about Agent Dugan's "training and experience." He had been employed by the FBI for only about two and a half years when the applied for the search warrant in this case. Exhibit C to Def. Mtn ¶ 4. He was assigned to investigate not only child pornography but also other "computer-related violations." Exhibit C to Def. Mtn ¶ 4. He does not say how many child-pornography possession and distribution cases

he has investigated, nor does he say how many execution of warrants, he has participated in, or whether he had ever before written a search warrant affidavit. Exhibit C to Def. Mtn ¶ 5. Nor does he indicate what kind of training he has had in investigating computer-related crimes and/or child pornography. Thus, to the extent that "the statements and conclusions in this affidavit are based on [his] training and experience," Exhibit C to Def. Mtn ¶ 6, there is no indication that they are drawn from a very deep pool.

Even accepting Agent Dugan's assertions, however, neither the affidavit nor the cases cited by the government, Gov't Opp. at 17, establish probable cause that evidence or contraband would be found on Mr. Wilson's computer when the warrant issued. As the government points out, the affidavit asserts generalizations, which would allow law enforcement to search any computer at any time based only on a showing that some illicit material once was present. Courts have declined to go so far. *See, e.g.*, *United States v. Lacy*, 119 F.3d 742, 746 (9th Cir. 1997); *United States v. Zimmerman*, 277 F.3d 426, 433-34 (3d Cir. 2002). Compared to the cases the government cites, Gov't Opp. at 17, the affidavit here includes no facts to support application of these generalizations to this case. *Cf. United States v. Riccardi*, 405 F.3d 852, 860-61 (10th Cir. 2005);[4] *Lacy*, 119 F.3d at 745-46.

In its opposition, the government lists allegations but none of them -- about Mr. Wilson's "online chat habits," his storing of pictures of "'attractive' girls between the ages of 16 and 35" or his "receiving pictures of pre-teens," Gov't Opp. at 17-18 -- establishes that any pictures he received or possessed were of *child pornography*. And nothing in the affidavit establishes that Mr. Wilson used the computer the agents seized when he emailed the three pictures to the undercover agent nine months earlier.

---

[4]The passage the government cites from *Riccardi* about collectors hoarding child pornography because it is so difficult to acquire, Gov't Opp. at 17, is contradicted by the affidavit in this case. *See* Exhibit C to Def. Mtn ¶ 14 (noting "the ability to produce child pornography easily, reproduce it inexpensively, and market it anonymously"; "This pornography can be electronically mailed to anyone with access to a computer and a modem.").

WILSON REPLY RE: SUPPRESSION
No. CR 08-00262 SBA                                    12

### E. The Good-Faith Exception Does Not Apply

The government bears the burden of establishing an officer's objectively reasonable reliance on a warrant. *United States v. Kow*, 58 F.3d 423, 428 (9th Cir. 1995). An officer cannot rely on a warrant in objectively reasonable good faith if the warrant affidavit is so lacking in indicia of probable cause. *United States v. Leon*, 468 U.S. 897, 902 (1984).

The warrant here lacks probable cause to establish both that Mr. Wilson committed the federal offenses identified in the affidavit and that evidence probably would be found on his computer when the warrant issued. Moreover, the government cannot claim that any deficiencies should be excused because Agent Dugan was pressed for time where he spent nine months investigating Mr. Wilson, and did not seek a warrant for a month and a half after his interview of Mr. Wilson and the seizure of his computer. *See United States v. Luong*, 470 F.3d 898, 904 (9th Cir. 2006). The good-faith exception does not apply. All fruits should be suppressed.

### F. Both Warrants Included Material Misstatements And Omissions Without Which The Affidavits Would Not Have Established Probable Cause

The affidavit's statement that Mr. Wilson said during the September 5, 2007, interview that "he uses AOL . . . to send and receive images of minors engaged in sexually explicit conduct," does not appear in the affiant's report of the interview. This statement is critical because it is one of only two allegations in the affidavit that arguably indicate he committed the alleged child-pornography offenses. The government's claim that this statement "was an effort to summarize the admissions Wilson made . . . during the interviews with SA Dugan is problematic as it is dramatically more incriminating than anything Mr. Wilson said during the interview, as reflected in the report of the interview prepared that day.[5] Mr. Wilson *never* said

---

[5] In the report, Agent Dugan wrote that Mr. Wilson said "he exchanged pictures with girls who were under 18," he "would typically ask for 'self pictures' which would be exchanged via email," that he "has received pictures of 'attractive' girls between the age of 16 and 35 years old," that he "has received email with pre-teen pictures," that he has pictures of people 16 years old on his computer and that "all inappropriate pictures were from other AOL users." Exhibit A to Def. Mtn; Dugan Decl. ¶ 8; Gov't Opp at 21.

that he sends or receives "images of minors engaged in sexually explicit conduct."

In the affidavit Agent Dugan clearly states that Mr. Wilson "admitted that he uses AOL . . . to send and receive images of minors engaged in sexually explicit conduct" during the September 5, 2007, interview. Exhibit C to Def. Mtn ¶ 21.a. Now, however, the government claims that this information could have come from the January 2007 online chat with the undercover agent.[6] Gov't Opp. at 21; Dugan Decl. ¶ 4. The government acknowledges that Agent Dugan did not have a transcript of this chat when he prepared the affidavit. Gov't Opp. at 21; Dugan Decl. ¶ 4. It contends that he had a "written 'lead'" which has not been disclosed.

The government has provided a transcript of the January 2007 chat between Mr. Wilson and the undercover agent which does *not* say during the chat that he has "pictures of kids the same age as the undercover agent engaging in sexual acts."[7] Wherever the government now says this statement came from, the fact is that it does not appear anywhere the government has identified. The statement was necessary to a finding of probable cause. Mr. Wilson at least is entitled to a *Franks* hearing. Finally, the affidavit says nothing about the circumstances under which the agents obtained the computer or the amount of time that had passed. These omissions are material to the legality of the seizure and hence the validity of the warrant.

### G.    The Warrant Was Not Executed Within The Time Specified

By its terms, the protocol applies where agents encounter electronic data-storage devices in the course of searching a location. It sets forth procedures by which agents must first try to

---

[6] The government did not disclose to the defense a transcript of the chat until August 21, 2008, more than a week after Mr. Wilson's motion was filed.

[7] The only statement made that comes close is "i have pics ur age of normal and naughty." Exhibit A to Dugan Decl. After Mr. Wilson apparently sent pictures to the agent, she complained that "those r older den me . . . those girls look like high skool girls here." Exhibit A to Dugan Decl. Moreover, it appears that the pictures the agent complained were of high-school-age girls were the same three pictures referred to specifically in the affidavit. *See* Exhibit C to Def. Mtn ¶ 19.a-b (Wilson sent three pictures after he asked if agent was home alone); Exhibit A to Dugan Decl.

WILSON REPLY RE: SUPPRESSION
No. CR 08-00262 SBA                                14

search the device on the site; if that it unreasonable, to copy the device; and only if that is unreasonable to remove the device for an off-site examination. Exhibit D to Def. Mtn. None of the procedures apply here, where the computer already was in the government's possession, and the warrant was not for the purpose of searching a location and possibly seizing computers but specifically for the purpose of searching a computer the government already had seized.

In addition, this is not only a technical, non-constitutional violation of Rule 41 of the Federal Rules of Criminal Procedure. The officers executing the warrant conducted a search outside the time specified in the warrant, which means a search that was not authorized by the warrant and that thus was unconstitutional. *See Sgro v. United States*, 287 U.S. 206, 210-12 (1932); *United States v. McElrath*, 759 F. Supp. 1391, 1394 (D. Minn. 1991). Because the violation here was a constitutional violation in the execution of the warrant, suppression is the appropriate remedy. *See Williamson*, 439 F.3d 1125, 1132-33 (9th Cir. 2006); *United States v. Gantt*, 194 F.3d 987, 1006 (9th Cir. 1999).

Even if the violation here were merely a violation of the time limits, suppression would be an appropriate remedy in this case because the executing officers deliberately disregarded the time limit set forth on the face of the warrant. *Williamson*, 439 F.3d at 1133; *Gantt*, 194 F.3d at 1005. When the government belatedly sought an extension of time to search the computer, it did so from a different magistrate than the one that issued the search warrant, and it did not provide this magistrate with a copy of the original warrant and affidavit or all the pertinent facts. Under these circumstances, the Court should suppress all fruits of the unlawful search of Mr. Wilson's computer, even if it finds only a technical violation of Rule 41.

Dated: September 2, 2008

                       Respectfully submitted,

                       BARRY J. PORTMAN
                       Federal Public Defender

                          /S/
                       JOYCE LEAVITT
                       Assistant Federal Public Defender